## WITMER *v.* UNITED STATES.

No. 164.   Argued February 1, 1955.—Decided March 14, 1955.

*Hayden C. Covington* argued the cause and filed a brief for petitioner.

*J. F. Bishop* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, John F. Davis* and *Beatrice Rosenberg.*

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioner, a member of the Jehovah's Witnesses, stands convicted of failing to submit to induction into the armed forces in violation of § 12 (a) of the Universal Military Training and Service Act, 62 Stat. 622, 50 U. S. C. App. § 462 (a). On trial, he centered his defense on the contention that he was wrongfully denied exemption as a conscientious objector. This Term, we have been asked to review a relatively large number of criminal prosecutions involving various procedural and substantive problems encountered in effectuating the congressional policy of exempting conscientious objectors from military service. We have granted petitions for certiorari in this and the three following cases to consider certain of the problems recurring in these prosecutions.[1]

Section 6 (j) of the Universal Military Training and Service Act, 62 Stat. 612, as amended, 50 U. S. C. App. § 456 (j), provides that no person who, "by reason of religious training and belief, is conscientiously opposed to participation in war in any form," shall be required to undergo combatant training or service in the armed forces. The conscientious objector, to prove his claim, fills out a questionnaire in which he makes a short statement of his religious beliefs and cites evidence, such as prior public expression of his views, to demonstrate his sincerity. If, on the basis of this and a personal interview, the local

[1] Because of the wide divergencies in the problems presented, we shall consider the cases before us in separate opinions.

Board decides that the requisite beliefs are sincerely held, the registrant will be classified a conscientious objector. If the local Board denies the claim, the registrant has a right of appeal to the Appeal Board. That Board, before reaching a final decision, refers the registrant's file to the Department of Justice for "inquiry and hearing." As the first step in this auxiliary procedure, the Federal Bureau of Investigation investigates the registrant's claim and refers its report to a hearing officer of the Department of Justice. The registrant may then appear before this officer to present evidence and witnesses in his behalf. After this, the hearing officer makes a report to his superiors in the Department of Justice, suggesting a disposition of the case. The Department, after reviewing the registrant's file, the FBI report and the report of the hearing officer, writes a short recommendation, stating its reasons and whether it has concurred in or overruled the suggestion of the hearing officer. This recommendation of the Department of Justice is transmitted to the Appeal Board and placed in the registrant's file. The statute provides that "the appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice . . . ." 62 Stat. 613, 50 U. S. C. App. § 456 (j). The Appeal Board, then, on the basis of the registrant's full file before it, comes to its conclusion, which, in the usual case, is the final determination of the Selective Service System. 62 Stat. 620, 50 U. S. C. App. § 460 (b)(3).

There is no direct judicial review of the actions of the Appeal Boards. Questions concerning the classification of the registrant may be raised either in a petition for habeas corpus or as a defense to prosecution for failure to submit to induction into the armed forces. All four of the cases decided today have arisen through the latter route.

378

On January 31, 1951, Witmer filed his classification questionnaire, together with an explanatory letter stating that he worked 40 hours a week in a hat factory and also cultivated a portion of his father's farm. In the letter, Witmer stated that he intended to bring more of the farm under cultivation and closed, "For this reason I am appealing to you to grant me an agricultural classification as I assure you that I will increase production year after year, and contribute a satisfactory amount for the war effort and civilian use." [2]

In his general questionnaire, Witmer expressly disclaimed any ministerial exemption by writing the phrase, "Does not apply," opposite the line inquiring whether he was a "Minister, or Student Preparing for the Ministry." He did claim to be a conscientious objector, however, although, on the special form for those claiming such classifications, he failed to fill in the specifications supporting his objections to combatant or noncombatant service. On this special form, Witmer wrote "My training and belief in relation to a Supreme Being involves duties superior to those arising from any human relation. This prevents me from turning aside from those superior duties which I owe to a superior Being." Therefore, he wrote, he was required to maintain neutrality in the "combats of this world," and was permitted the use of force only "at the command of Almighty God." Although he inserted a negative answer to the question asking whether he had given public expression to his conscientious objector views, he claimed that he had demonstrated his convictions by studying the Bible and by telling others about God's Kingdom and "of how He will put a stop to all wars."

On February 21, 1951, the local Board classified Witmer I–A, denying his claims for classification as a farmer

---

[2] The record indicates that this farm had not been worked for 23 years, except for a garden tract used for family purposes.

and a conscientious objector. Eight days later, he wrote the Board advising them that he intended to appeal from their action and requesting classification as "a minister of the gospel." Less than a week after posting this claim, he left his job in the hat factory, and shortly thereafter, at his appearance before the local Board, Witmer presented an affidavit from a local officer of the Jehovah's Witnesses that he had "on many occasions" engaged in the "preaching of the good news or gospel to others." At the same time, he submitted a written statement that he carried Bibles and study aids from door to door, and, further, that one could be ordained as a minister of the Jehovah's Witnesses without attending a seminary or performing funeral or marriage ceremonies. In this statement Witmer wrote, "The work that I now do is of greatest universal importance therefore I could not take part in a conflict of national or even international importance." At the conclusion of the hearing, the Board felt the evidence did not warrant classification as a minister and "informed the registrant his case would be sent up to the Appeal Board following his physical examination." [3]

---

[3] The minute of the local Board meeting is as follows:

"March 19, 1951

"Re: Order #36–28–30–71 Philip Andrew Witmer

"The Board met with registrant today. The registrant informed the Board that he left his place of employment on March 3, where he had worked for three years in a hat factory. The Board chairman immediately pointed out that he was classified as 1–A on February 21, which meant he left his position about two weeks later. He then mentioned that his father had a farm which had not been worked as a farm for 23 years but that he felt he was going to start getting this farm in shape. Prior to this time he stated he had gotten a few acres in shape for their own family use so that they would not be dependent upon other people.

"The registrant then pointed out that he was a minister of the Gospel and the only evidence he presented to substantiate this fact

The Appeal Board, pursuant to the Act, forwarded the case to the Department of Justice. Apparently, the FBI report contained nothing unfavorable to petitioner and even included statements that he appeared "very religious and very sincere" and that he had said it was wrong to go to war.

At the Department hearing, Witmer asserted that he could not engage in noncombatant service since he felt that "the boy who makes the snow balls is just as responsible as the boy who throws them." On the basis of the entire file, including the FBI report and the interview, the hearing officer suggested a conscientious objector classification. The Department of Justice, however, concluded that Witmer's inconsistent statements, together with his offer to contribute to the war effort, precluded such a classification and recommended to the Appeal Board that Witmer's claim be denied. After consideration, that Board retained petitioner in I–A, and when ordered to report for induction, he refused to submit. This prosecution followed, and Witmer's conviction, 115 F. Supp. 19, was affirmed by the Court of Appeals for the Third Circuit, 213 F. 2d 95. We granted certiorari. 348 U. S. 812.

The primary question here is whether, under the facts of this case, the narrow scope of review given this Court permits us to overturn the Selective Service System's refusal to grant petitioner conscientious objector status. It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on

---

was some paraphernalia from the Watchtower Association of the Jehovah Witness [sic]. The registrant was asked if he was an ordained minister and he said Jehovah [sic] Witnesses became ordained when they started distributing their literature. The Board felt this was not sufficient evidence to warrant a 4–D Classification and informed the registrant his case would be sent up to the Appeal Board following his physical examination." R. 33–34, 54–55.

the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. *Dickinson* v. *United States,* 346 U. S. 389, 396 (1953). The classification can be overturned only if it has "no basis in fact." *Estep* v. *United States,* 327 U. S. 114, 122 (1946). In *Dickinson* v. *United States,* 346 U. S. 389 (1953), the most recent case in which this Court has applied this standard to the facts of a particular case, we set aside the conviction, holding that the local Board had wrongfully denied the registrant a ministerial classification. The objective facts on which Dickinson based his claim as a full-time minister were undisputed, and they placed him squarely within the terms of the Act. It was not for the Board to say whether he was motivated by sincere religious principles in becoming a minister, or whether his convictions were deep, but merely, as the Act provides, whether he was a "regular or duly ordained minister of religion" as therein defined. The Court therefore held that the local Board's decision was without basis in fact, there being no evidence "incompatible with the registrant's proof of exemption" to rebut his prima facie case.

Petitioner argues from this that there was no specific evidence here incompatible with his claimed conscientious objector status. But in *Dickinson* the registrant made out his prima facie case by means of objective facts— he was a "regular or duly ordained minister of religion." Here the registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity

of the registrant is relevant. It is "affirmative evidence . . . that a registrant has not painted a complete or accurate picture . . . ." *Dickinson* v. *United States, supra,* p. 396. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in *Dickinson,* the evidence providing "basis in fact" must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith.

Since Witmer stated his beliefs with apparent sincerity, and since we find no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability, we must examine the objective facts before the Appeal Board to see whether they cast doubt on the sincerity of his claim.

We note that when Witmer asked his Board for classification as a farmer, he knew that the land involved in his request had not been cultivated for 23 years, save for a few acres used for family purposes. At that time, he swore that the ministerial classification did not apply to him. Yet in March—after he knew his claim for exemption as a farmer had been denied—he just as fervently claimed he was a full-time minister.[4] Furthermore, although he asserted his conscientious objector belief in his first exemption claim, in the same set of papers he promised to increase his farm production and "contribute a satisfactory amount for the war effort." Subsequently, he announced "the boy who makes the snow balls is just as responsible as the boy who throws them." These inconsistent statements in themselves

---

[4] Ordinarily the claim of a Jehovah's Witness to exemption as a minister, though unfounded in law, would not reflect adversely on his good faith, since it is the doctrine of the Jehovah's Witnesses that all are ministers.

cast considerable doubt on the sincerity of petitioner's claim. This is not merely a case of a registrant's claiming three separate classifications; it goes to his sincerity and honesty in claiming conscientious objection to participation in war. It would not be mere suspicion or speculation for the Board to conclude, after denying Witmer's now-abandoned claims of farmer and minister, that he was insincere in his claim of conscientious objection. Even firemen become dubious after two false alarms. Aside from an outright admission of deception—to expect which is pure naivety—there could be no more competent evidence against Witmer's claimed classification than the inference drawn from his own testimony and conduct. There are other indications which, while possibly insignificant standing alone, in this context help support the finding of insincerity. Among these is petitioner's failure to adduce evidence of any prior expression of his allegedly deeply felt religious convictions against participation in war.

With due regard for the policy of Congress, which was to make review within the Selective Service System final in all cases where there was conflicting evidence or where two inferences could be drawn from the same testimony, we cannot hold that petitioner was wrongfully denied the conscientious objector classification. In short, there was basis in fact for the Board's decision.

Petitioner also complains of the local Board's action in not formally reopening his case at the March 19, 1951, meeting when he filed his application for reclassification as a minister. According to the testimony of the clerk of the Board, the Board chairman had stated that the case was out of their hands because petitioner had taken an appeal. The record of this hearing, however, shows that Witmer did offer his proof, and that the Board did discuss the matter. The chairman then told Witmer that the new evidence he submitted did not entitle him to a ministerial

exemption. It is true that § 1624.2 (b) and (c) of the Selective Service Regulations, 32 CFR (1949 ed.), required that the case be reopened and the registrant reclassified. However, in view of the concurrent findings of the trial judge and the Court of Appeals that there had, in fact, been a reconsideration of Witmer's claims and that he was then personally advised of his continuance in the I–A classification, we think the command of the regulation to *reopen* and *reclassify* was honored, even though the Board's action was not tagged with these words. In this state of the record, the contention of Witmer narrows down to mere cavilling. No prejudice is claimed from this and we find no error. The judgment is

*Affirmed.*

Mr. Justice Black and Mr. Justice Douglas dissent.

Mr. Justice Minton, concurring.

Because the Board's order was an allowable one under the law and not arbitrarily taken, I concur in the result in this case.