**Jurval Neal BATTERTON, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 15977.

United States Court of Appeals
Eighth Circuit.

Nov. 3, 1958.

Rehearing Denied Nov. 28, 1958.

J. B. Tietz, Los Angeles, Cal., for appellant.

Joseph L. Flynn, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., was with him on the brief) for appellee.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

Jurval Neal Batterton on September 11, 1957, was charged by indictment with having refused to report for induction into military service as ordered by his Local Board No. 51, at Kansas City, Missouri; this in violation of § 462 of Title 50 U.S.C.A.Appendix. The defendant (appellant)—whose claim for exemption as a conscientious objector under § 6(j) of the Universal Military Training and Service Act, 62 Stat. 604, 612, 65 Stat. 75, 86, 50 U.S.C.A.Appendix, § 456(j), had been denied by the local selective service authorities—entered a plea of not guilty, waived trial by jury, was tried to the court, found guilty, and sentenced on February 28, 1958, to two years' imprisonment, and has appealed.

The factual background of this case is as follows:

The defendant, who gave his birth date as November 1, 1933, and his address as 3211 McGee Street, Kansas City, Missouri, registered November 5, 1951, with the Selective Service System, Local Board No. 51, of that City. In his "Classification Questionnaire," filed December 28, 1951, he made no claim to being a conscientious objector. He was classified by the Local Board on March 7, 1952, as I-A, and was so notified. On June 23, 1953, he was given notice to report for examination on June 29, 1953, and on July 2, 1953, was advised of his acceptability for military service. He was mailed a form to complete, regarding his dependents, on August 17, 1955. He appeared at the Local Board on August

22, 1955, and asked for deferment on the ground of conscientious objection to war. He was furnished the "Special Form For Conscientious Objector" to fill out, which he completed and returned to the Local Board on August 29, 1955.

Under the caption "Participation in Organizations," the defendant stated that he was a member of a religious sect or organization, namely the Radio Church of God, 363 Grove Street, Pasadena, California; that he became a member in January 1955; and that he attended Church in St. Louis, Missouri.

The defendant signed paragraph (B) of "Series 1.—Claim for Exemption." That paragraph of the "Special Form For Conscientious Objector" reads as follows:

"(B) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces."

The defendant attached to the form the following typewritten statements over his signature:

"The Reason I have not submitted my C.O. Before.

"The reason why I have not objected sooner, Is, When I filled out my questionnaire I had no knowledge of the truth. Therefore I was not a contientious [sic] Objector. Until about 8 month's ago I had not learned. Until one learns the truth you can't do the truth.

"But I firmly believe that when I learn a truth from the Bible that if I do not do that truth, I will be willfully sinning. Therefore I am a Contentious [sic] Objector."

---

"Answers for Question on First and Third Pages.

"According to the Bible (Acts 4.-29), I am to obey God Rather than man, I will however obey man as long as he is in (within) God's laws. All of the new Testament teaching forbids war in any form. We are told to 'turn the other Cheek', 'To love our enemies'. (One Can't truly love a man & then kill him), and then God says 'Vengeance is Mine', (Not Man's)

"If a group of four bandits agree to commit some robberies, but for their own protection they bribe a Doctor to go along, so that they can have their wounds cared for in case they receive any. Will not the Doctor in the eyes of the law be considered an accomplice to their crimes, and therefore be subject to trial & punishment. That is even tho he does nothing more than attend the robbers or killers wounds.

"In Like manner I feel I would in God's eyes, be an accomplice to murdering or killing if I went into the Armed Forces even as a Non-Combatant."

On September 16, 1955, he addressed to the Local Board a letter containing the following paragraph:

"My religious beliefs would prevent me from ever possibly partaking in any form of the Armed Forces. In other words, (If I should do this and knowing it was wrong I would have willfully sinned.) This I believe would be an unpardonable Sin. No man on earth is working for my Salvation. Only I can choose Right from Wrong, for my own personal Salvation. If I am to be in God's Church I must obey his commandments. Therefore I am appealing to you the President of the Board, please take this into consideration. It is not my Will to stay out of the Service, but God's will."

He was given notice to appear before the Local Board, and did so on October 21, 1955, when his case was reopened. He was again Classified I–A. He appealed from the action of the Local Board.

His file was transferred to the Department of Justice for investigation and a hearing pursuant to Section 6(j) of the Act. The defendant was furnished a résumé of the reports of the Federal Bureau of Investigation with respect to his claim for exemption, and he was accorded a hearing before the Hearing Officer.

The Chief of the Conscientious Objector Section of the Department of Justice, on June 21, 1956, sent his report and recommendation to the Appeal Board, Western District of Missouri, from which we quote the following:

"The Hearing Officer found that statements of the registrant and of his wife were reasonably forthright, and he did not doubt that the registrant is 'intending to be sincere in his claim to exemption on the grounds of religious training and belief.' However, the Hearing Officer found that registrant 'is still somewhat immature in his thinking, and that he has not established satisfactorily that the religious beliefs on which he bases his claim to exemption are firm and unalterable convictions resulting from training or teaching in the family, or upon training or teaching in the church, or even upon consistent and profound personal study and research.' 'Notwithstanding the earnest assertions of the registrant that he could not conscientiously participate in war in any form,' the Hearing Officer opined that 'on the whole record the registrant's claim to exemption from both combatant and noncombatant training and service in the armed forces on the ground of religious training and belief has not been convincingly established.' Consequently, he concluded that the registrant has failed to sustain his conscientious objections to either combatant or noncombatant military training and service by reason of his religious training and beliefs. Accordingly, he recommended that registrant's claim be not sustained.

"In arriving at our conclusion, we take particular note of registrant's statement to the Hearing Officer that he still has a lot of reading to do; that he has not yet completely read through the Bible; and that he could change his mind. Based upon registrant's assertions, and in view of the findings of the Hearing Officer, the Department of Justice concludes that registrant has failed to establish that his alleged objections to military service are based upon deep-seated conscientious convictions arising out of religious training and belief. Accordingly, the Department recommends that the registrant's claim be not sustained by your Board."

The Appeal Board on November 29, 1956, by a vote of five to nothing, classified the defendant I–A. On December 14, 1956, the defendant was ordered to appear for induction on January 2, 1957. He did not appear, and his prosecution followed.

The contentions of the defendant are: (1) that he made a prima facie case for a conscientious objector classification, and that there was no evidence to combat it; (2) that the Local Board gave an untenable reason for its classification; (3) that the Government failed to establish the geographical jurisdiction of the Local Board; and (4) that the trial court erred in quashing a subpoena issued by the defendant to bring in (a) the F.B.I. reports concerning his character and the good faith of his claimed conscientious objections to war, and (b) the report of the Hearing Officer of the Department of Justice to the Attorney General on the same subject.

Section 6(j) of the Universal Military Training and Service Act, 62 Stat. 604, 612, 65 Stat. 75, 86, 50 U.S.C.A.Appendix, § 456(j), provides:

"Nothing contained in this title [sections 451–454 and 455–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United

States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. * * *"

■ The only question which gives us serious concern is whether there was any basis in fact for rejecting the defendant's claim for exemption. The answer to that question, we think, is to be deduced from the teachings of the Supreme Court in Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567, and Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132. In the Dickinson case the selective service authorities had denied Dickinson's claim for exemption as a minister. He had failed to report for induction, was prosecuted, and convicted. The United States Court of Appeals for the Ninth Circuit affirmed. 203 F.2d 336. The Supreme Court granted certiorari, and, by a six to three decision, reversed.

■ As we understand the Dickinson case, it is authority for the proposition that if there is no basis in fact for the classification which a local board gives a registrant, its action in that regard is beyond its jurisdiction (at page 394 of 346 U.S., at page 156 of 74 S.Ct.) and is subject to review by the courts. The Supreme Court, after stating that "Dickinson's claims were not disputed by any evidence presented to the selective service authorities, nor was any cited by the Court of Appeals," said: "The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here." (Page 396 of 346 U.S., at page 157 of 74 S.Ct.) The Court also said: "But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act [Universal Military Training and Service Act] and foreign to our concepts of justice." (Page 397 of 346 U.S., at page 158 of 74 S.Ct.)

Mr. Justice Jackson, who wrote the dissenting opinion in the Dickinson case, said on page 399 of 346 U.S., on page 159 of 74 S.Ct., after stating that the local board or the Appeals Board disbelieved part of the registrant's testimony or doubted his good faith: "Under today's decision, it is not sufficient that the board disbelieve the registrant. The board must find and record affirmative evidence that he has misrepresented his case—evidence which is then put to the test of substantiality by the courts. In short, the board must build a record." That this appraisal of the majority opinion is substantially correct seems to be borne out by later opinions of the Supreme Court, namely, Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428; Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436; and compare Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467.

The task of this Court in this case is obviously to determine whether there is any affirmative evidence in the record to support the conclusion of the selective service authorities that the defendant had "not painted a complete or accurate picture of his activities."

On behalf of the Government it is contended that when the defendant in the Special Form in which he made his claim for exemption, answered "yes" to the question, "Are you a member of a religious sect or organization," and stated that it was the "Radio Church of God," he did not paint an accurate picture of his activities; and that this affirmatively appears from his and his wife's statements to the Hearing Officer. According to the report of the Department of Justice to the Appeal Board, the registrant told the Hearing Officer "that he still has

a lot of reading to do; that he has not yet completely read through the Bible; and that he could change his mind"; and his wife said "that they actually began studying the teachings of the church about two years ago" and "that they had been furthering their understanding of the teachings of the Church of God and have been making regular contributions to the church ever since," and also said "that while they both do believe in the teachings of the church, 'until we are baptized we are not actually in God's Church.'" The defendant then stated "that he felt that he did not yet know enough about it to become a member."

The statement of the defendant in the Special Form that he was a member of the Radio Church of God was inaccurate in that he had not been baptized, but it was apparently no more than a technical misstatement. The Hearing Officer and the Department of Justice laid no stress on it. The sincerity of the defendant was not doubted by the Hearing Officer, who, "Notwithstanding the earnest assertions of the registrant that he could not conscientiously participate in war in any form, * * * opined that on the whole record the registrant's claim to exemption from both combatant and noncombatant training and service in the armed forces on the ground of religious training and belief has not been convincingly established."

It seems to us that the defendant succeeded in making a prima facie case for the exemption which he claimed. His situation, we think, does not differ substantially from that of the registrant in the Dickinson case. The selective service boards and the Department of Justice, rather obviously, were not convinced that the defendant here was what he claimed to be, and therefore denied his claim. It seems quite evident that mere disbelief is not enough, and that there must be some affirmative evidence to support the rejection of the claimed exemption, or something in the record which substantially blurs the picture painted by the registrant and casts doubt on his sincerity or the genuineness of his claim.

See Witmer v. United States, 348 U.S. 375, 382–384, 75 S.Ct. 392, 99 L.Ed. 428.

Our conclusion is that the conviction of the defendant cannot be sustained. Other questions raised need not be considered. The judgment appealed from is reversed.