**UNITED STATES of America,
Plaintiff,**

v.

**Peter John ST. CLAIR, Defendant.**

**No. 68–CR–77.**

United States District Court
E. D. New York.

Nov. 20, 1968.

Joseph P. Hoey, U. S. Atty. for Eastern Dist. of New York, Brooklyn, N. Y., for plaintiff, Michael Rosen, Frank R. Natoli, Asst. U. S. Attys., of counsel.

Lubell & Lubell, New York City, for defendant, Jonathan W. Lubell, Stephen L. Fine, New York City, of counsel.

## OPINION AND ORDER

WEINSTEIN, District Judge.

This criminal prosecution for refusal to submit to induction (50 U.S.C.App. § 462(a)) presents the narrow but spiny question of whether there is revealed in the defendant's Selective Service record any "basis in fact" for denying his request for classification as a conscientious objector. 50 U.S.C.App. § 460(b) (3); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Since our answer is no, the indictment must be dismissed.

In July, 1965, shortly after his eighteenth birthday, defendant registered with his Local Board, leaving blank the claim on the registration form to be filled in by a conscientious objector. As a college student he was classified 2–S. Informed that he had withdrawn from school "as of 12/1/66," on January 4, 1967 the Local Board reclassified defendant 1–A. By letter dated January 9 defendant requested a personal appearance, and on February 14 he forwarded to the Local Board SS Form No. 150, the "Special Form For Conscientious Objector."

A ten page handwritten explanation the defendant attached to his Form 150 stated that he is a pantheist, not a member of an organized religious group, and opposed to war by reason of his religious beliefs. He wrote in part:

"I consider myself a Pantheist. In my belief everything is God. All Physical substance and anything else that exists is God. * * * I believe that God is an impersonal force or being rather than a personal one and immanent rather than transcendent. God, in my belief, encompasses everything that exist [sic] and is therefore an existing being itself.

* * * * * *

My belief in this "Supreme Being" involves only the duty to live according to my own conscience. It is this duty to my conscience that prevents me from participating in war, and makes me willing to bear the consequences of a jail sentence if necessary. I believe that war is a crime against humanity and that I myself would be playing a major part in this crime if I were to participate in any war. I therefore must and will refuse to serve in any military organization, in obedience to this belief.

* * * * * *

I believe that the bases of my present pantheistic beliefs was [sic] in my questioning and later rejecting much of the theology which I was taught. My pantheistic views also stem in part from the scientific teaching I received during my Catholic education.

My moral belief in non participation in war comes in part from the opinions of certain teachers, [mentioning names] who taught me at St. Augustines [sic] high school * * * [and] Manhattan College. * * *

The violent force of one human being inflicting physical damage on another human being with the intent to injure, is in direct contridiction [sic] to this idea of love, and I consider it a gross evil. There are however some circumstances on the individual level in which I feel that the use of limited physical violence is necessary. There are occasions in which the force is used to aid rather than injure the victem [sic], such as medical treatment upon a delerious [sic] patient, restraining a mental patient, or in subduing a criminal. In these cases I feel that the violence inflicted upon the victem [sic] is done so for his greater good. (cure of patients, rehabilitation

of criminals) These acts and others like them, because their purpose is not to injure people but to help them, could be carried out in a spirit of love rather than hate.

\* \* \* \* \* \*

The Local Board notified defendant that a personal interview would be granted. It instructed him, in a mimeographed letter, that he could present "new evidence pertinent to your case \* \* \* in writing" and might be accompanied by a companion but not by "an attorney or legal counsel." The defendant appeared alone and without submitting any additional documents. He was seen by a single member of the Board. The written summary of this personal appearance in the Local Board's records reads, so far as relevant, as follows:

"A thorough reading of all sheets attached to 150 reveals innumerable inconsistencies—hold until after preinduction physical for further study of entire file for local board determination."

Five days after defendant was found physically fit for military duty, the Local Board met and unanimously denied conscientious objector status. The Board's record of the meeting states only:

"Review of entire file by local board & in opinion of member conducting hearing there was a lack of sincerity & in the opinion of the local board the registrant did not maintain the necessary of [sic] burden of proof to warrant a 1O or 1AO classification."

Having received a letter from defendant notifying it that he appealed its ruling, the Board scheduled a meeting with "the Government Appeal Agent regarding" the appeal. The notes of this meeting—apparently those of the Appeal Agent—contain only a brief summary of the file and conclude: "Registrant respectfully asks that he be reclassified 1–O." There is no indication in the record that the Agent gave defendant any advice.

Following this meeting defendant was sent another mimeographed letter explaining that the former method of investigation by the Department of Justice to develop the facts in the case had been abandoned, that the burden was upon defendant "to substantiate his claims" and that he could present additional written statements. This letter reads, in part, as follows:

"Any information that would tend to indicate that your claim for Conscientious Objection is sincere and meaningful and not based on political, philosophical or sociological views nor merely your own personal moral code, would be helpful, as well as information showing that you are opposed to war in any form, including one which is purely defensive in nature, and not merely opposed to a particular war or form of war.

The above suggested information may be submitted by way of a written statement by you or by some of your friends and associates who are familiar with your views.

Please understand that the burden is upon you to substantiate your claim."

The defendant submitted no further evidence. By a vote of 5–0 on December 22, 1967 the Appeal Board continued his 1–A classification.

■ After the appeal had been pending some months, defendant mailed a letter to the Department of Justice stating that he would refuse "to cooperate any further with the Selective Service System" because of his belief in "the sacredness of human life" and that he was, accordingly, "withdrawing" his request for conscientious objector status. This letter was apparently never considered by the Appeal Board. This Court can only consider facts before that Board in determining the validity of the classification decision. See Witmer v. United States, 348 U.S. 375, 382, 75 S. Ct. 392, 396, 99 L.Ed. 428 (1955). Since the letter of withdrawal did not enter into the decision to deny conscientious objector status, it is not now relevant.

## JUDICIAL REVIEW OF CLASSIFICATION

█ The power to review classification decisions is one of the most restricted known to our law. 50 U.S.C. App. § 460(b) (3); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946) ("only if there is no basis in fact for the classification which [the Appeal Board] gave the registrant"); Blalock v. United States, 247 F.2d 615, 619 (4th Cir.1957) ("the range of review is the narrowest known to the law"). It "is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. * * * The classification can be overturned only if it has 'no basis in fact.'" Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 395 (1955).

█ In a criminal prosecution the District Court reviews the decision of the highest body within the Selective Service System that decided the issue— here, the Appeal Board. DeRemer v. United States, 340 F.2d 712, 715, 719 (8th Cir.1965); United States v. Wymer, 284 F.Supp. 100 (S.D.Iowa 1968). The Appeal Board makes a *de novo* determination. 32 C.F.R. § 1626.25. It may refuse to allow the decision of a local board while basing its decision upon the record before the Local Board. Comment, The Selective Service System: An Administrative Obstacle Course, 54 Calif.L.Rev. 2123, 2158–59 (1966); Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum. J. L. & Social Problems 120, 132 (1967). If the "information" in the record is "not sufficient" the Appeal Board "shall return the file to the local board with a request for additional information or action." 32 C.F.R. § 1626.23. The Local Board then, as always, has power to make a more precise record or to gather additional information by subpoenaing witnesses. 32 C.F.R. § 1621.15.

█ In the case before us the Appeal Board had only the record of the Local Board. While we can assume somewhat more knowledge on the part of the higher body, skill cannot substitute for a record if administrative expertise is not to become "'a monster which rules with no practical limits on its discretion.'" Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962); Baltimore & Ohio R. Co. v. Aberdeen & Rockfish R. Co., 393 U.S. 87, 92, 89 S.Ct. 280, 21 L.Ed.2d 219 (1968). In the absence of an assignment of reasons for the Appeal Board's decision, any judicial review of the question of whether there is a "basis in fact" for its decision must proceed from a consideration of the only evidentiary material upon which it could act— the record presented by the Local Board.

## LACK OF SPECIFICITY IN RECORD

The Local Board relied upon two grounds for its action: first, the "inconsistencies" in defendant's statement attached to the Special Form For Conscientious Objector; second, the defendant's insincerity. There was no indication of what these inconsistencies were. By insincerity the Local Board apparently meant that he was dissembling; there was no hint of what part of his claim was believed to be untrue. Nothing in the record suggests that the Local Board was moved by the fact that defendant had filed his claim only after he had left school.

█ A registrant is at least entitled to be told in what way his case is defective so that he has a reasonable opportunity to obtain evidence to support it. United States v. Purvis, 403 F.2d 555 (2d Cir.1968); DeRemer v. United States, 340 F.2d 712, 718 (8th Cir.1965) ("endeavoring in good faith to point out exactly what items influenced its opinion and thus to give appellant a fair chance to attack these conclusions"). "We are dealing here with a question of personal liberty." Estep v. United States, 327 U.S. 114, 121–122, 66 S.Ct. 423, 427 (1946).

A general mimeographed form letter indicating that additional written state-

ments may be submitted by defendant is not calculated to elicit a meaningful response from the sort of naive youth revealed by this record. Cf. Application of Gault, 387 U.S. 1, 34, 87 S.Ct. 1428, 1447, 18 L.Ed.2d 527 (1967) (a statement of "specific issues" is essential to due process). While he had the theoretical right to retain counsel, defendant had already been instructed that in his personal interview he could not be accompanied by "an attorney"—hardly the equivalent of being "notified of the * * * right to be represented by counsel." Id. 387 U.S. at 41, 87 S.Ct. at 1451. See also Id. 387 U.S. at 36, 87 S.Ct. at 1448 ("The juvenile needs the assistance of counsel * * * to make skilled inquiry into the facts * * * and to prepare and submit" them); Lockhart v. United States, (9th Cir.1968) (concurring opinion) ("a complex administrative process which is nonetheless deliberately nonadversary; in which the young registrant faced with a once-in-a-lifetime experience, * * * and in which the right to be represented by counsel is expressly denied").

Until 1967, when the system was abandoned, a registrant received a measure of protection from the requirement that the Department of Justice investigate and compile an impartial dossier, which could be contradicted. 50 U.S.C. App. § 456(j), as amended, Pub.L. 90–40, § 1(7) (1967), 81 Stat. 100. See, e. g., United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953); Storey v. United States, 370 F.2d 255 (9th Cir. 1966); United States v. Corliss, 280 F.2d 808, 810 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); Blalock v. United States, 247 F.2d 615, 619 (4th Cir.1957) ("a special protection for conscientious objectors").

■ The purpose of the 1967 change was to reduce delays in the processing of conscientious objectors' claims. Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum. J. L. & Social Problems, 120, 150 (1967). There was no intention to elim-

inate protections for those claiming conscientious objector status. H.R. Rep. No. 267, 90th Cong., 1st Sess. (1967), 1 U.S. Code Congressional and Administrative News 1348 (1967). Thus, although the scope of review has not changed, the Court must necessarily scrutinize more carefully the record of the Local Board which stands unsupplemented by the Department of Justice.

If defendant's asserted beliefs did not fall within the statutory requirements for a conscientious objector he is hardly in a position to complain. We therefore turn first to the issue of his claimed religious beliefs.

## RELIGIOUS BELIEF

■ The classification sought required that defendant, "by reason of religious training and belief [and not because of] philosophical views, or a merely personal moral code," be "conscientiously opposed to participation in war in any form." 50 U.S.C. App. § 456(j). Belief "in a traditional God" is not required. United States v. Seeger, 380 U. S. 163, 178, 85 S.Ct. 850, 860, 13 L.Ed.2d 733 (1965), aff'g United States v. Jakobson, 325 F.2d 409, 415 (2d Cir.1963) ("does not require belief in an anthropomorphic deity").

Suggestions for reform of the Selective Service Act made to Congress in 1967 did not include a proposal that there be a return to the unsatisfactory World War I provision exempting only those who were members of "well recognized religious" organizations "whose existing creed or principles forbid its members to participate in war." Act of May 18, 1917 § 4, 40 Stat. 78; M. Q. Sibley & P. E. Jacob, Conscription of Conscience, 11–12 (1952). See Report of the National Advisory Commission on Selective Service, In Pursuance of Equity: Who Serves When Not All Serve?, 48–51 (1967); Civilian Advisory Panel on Military Manpower Procurement, Report to the Committee on Armed Services, House of Representatives, Ninetieth Cong., 1st Sess. 13–14 (1967); H. R. Rep. No. 267, 90th Cong., 1st Sess.

(1967), 1 United States Code, Congressional and Administrative News 1308, 1348–49 (1967); Conf.Rep.No. 346, 90th Cong., 1st Sess. (1967), 1 United States Code Congressional and Administrative News 1352, 1359–60 (1967). Cf. M. Konvitz, Religious Liberty and Conscience 37 (1968) ("there is a serious preliminary question, * * * whether either Congress or the Court has the constitutional right to define 'religion' at all."); Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). The only substantive change in the conscientious objector provision was deletion of the requirement that there be a belief in a "Supreme Being." Universal Military Training and Service Act of 1948 § 6(j), ch. 625, 62 Stat. 613, as amended, Act of June 19, 1951 § 1(q), ch. 144, 65 Stat. 86; Military Selective Service Act of 1967, Pub.Law 90–40 § 1(7) (1967); Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum. J. L. & Social Problems 120, 151–53 (1968) ("deletion worked no change in the law").

The religious belief need not lead inexorably to conscientious objection, that is to say, it need not be a tenet of the faith as in the case of Jehovah's Witnesses. It is enough if the registrant has a religious faith and, by reason of that faith, he is opposed to participation in all war.

There are distinct problems presented to the Selective Service System by the necessity of determining the nature of a person's religious beliefs. "Human experience has devised no precise gauge for appraising a subjective belief lodged in the mind and heart of the person himself and never truly known by others." Blalock v. United States, 247 F.2d 615, 618 (4th Cir.1957). They are compounded in a case where objective manifestations of thoughts and feelings are at a minimum because they do not stem from membership in a church with a relatively fixed and readily determinable dogma.

■ Pantheism, though subject to widely varying interpretations, is in the main stream of religious thought. It is not a concept fabricated by charlatans to avoid their responsibilities under the law. Compare United States v. Kuch, 288 F.Supp. 439 (D.D.C.1968) (Boo Hoo Church for drug users) with II E. Caird, The Evolution of Religion, 125 (4th ed. 1907) ("St. Paul combines the idea of *spirituality* of God, which was characteristic of monotheism, with the idea of *immanence* of God, which was characteristic of pantheism"); J. Hunt, Pantheism and Christianity, preface (1884) (Christianity and pantheism can be reconciled); 2 A. McGiffert, A History of Christian Thought 88 (1953) ("the belief that all there is is God or a part of God", pantheism, was offensive to St. Augustine); J. Picton, Pantheism 10 (1905) ("precise opposite of Atheism"); Spinoza, Ethics (Everyman's Lib. ed. 1950) ("Proposition XIV: Besides God no substance can be granted or conceived." "Proposition XV: Whatever is, is in God, and without God nothing can be, or be conceived."); St. Thomas Aquinas, Summa Theologica, I, q. 8, art. I, p. 35 (Great Books ed.1952) ("God is in all things, and most intimately"). Because they find "God dispersed everywhere," pantheists "may love everyone in general." W. King, Introduction to Religion, 415 (1954). But cf. Spinoza, Ethics, 172 (Everyman's Lib.ed. 1950) ("love can be excessive"). This sense of identification through God with all other men may support conscientious objection to war. Cf. II C. E. Plumptre, History of Pantheism, 327 (reason pantheism is "not taking its rank among the religions of the world lies * * * in the fact that it gives no explanation of the mystery of Evil"). Pantheism should not, for purposes of classification under the Selective Service System, be considered merely a "philosophical view," or "personal moral code."

## INCONSISTENCIES

■ There are no inconsistencies in defendant's written statement of his religious beliefs that would warrant denial of his claimed classification. Belief in

the use of force to restrain the mentally ill or to prevent injuries to others is not inconsistent with the belief that participation in war in any form is immoral. See Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Purvis, 403 F.2d 555 (2d Cir. 1968); United States v. Gearey, 379 F.2d 915, 920 (2d Cir.1967); Taffs v. United States, 208 F.2d 329 (8th Cir. 1953), cert. denied, 347 U.S. 928, 74 S.Ct. 532, 98 L.Ed. 1081 (1954). Opposition to the war in Viet Nam is not inconsistent with opposition to all war.

## LACK OF SINCERITY AS ALTERNATE GROUND FOR BOARD DECISIONS

 An alternative reason given by the Local Board for its action was that "in [the] opinion of [the] member conducting [the] hearing there was a lack of sincerity." Even if this reason for the decision of the Local Board were supported by the record, the Appeal Board was presented with two grounds for decision, one of which—inconsistency—was unsupported; neither was specified by the Appeal Board as its ground for decision. See United States v. Jakobson, 325 F.2d 409 (2d Cir.1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Where two grounds for decision—one correct and one incorrect—are asserted and where there is no way of knowing which was relied upon, the courts may not assume that the correct one was used. See United States v. Englander, 271 F.Supp. 182 (S.D.N.Y.1967); cf. United States v. Carroll, 398 F.2d 651 (3d Cir. 1968); Gatchell v. United States, 378 F.2d 287 (9th Cir.1967). For this reason alone the indictment would have to be dismissed.

## BURDEN OF PROOF ON SINCERITY

The Local Board predicated its decision, at least in part, upon a failure of the defendant to maintain his necessary burden of proof. Presumably this lack was with respect to sincerity.

 The registrant bears the burden of establishing *prima facie* compliance with the requirement that he sincerely be conscientiously opposed, as a matter of religious training and belief, to participation in war of any kind. 32 C.F.R. § 1623.2; United States v. Carroll, 398 F.2d 651 (3d Cir.1968); United States v. Corliss, 280 F.2d 808, 815 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167 (1960). Once such a case has been made, the Selective Service System has the burden of showing something in the record supporting a denial. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Corliss, 280 F.2d 808 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167 (1960); Batterton v. United States, 260 F.2d 233 (8th Cir.1958).

The Supreme Court in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), held that where a registrant who claimed a ministerial exemption made a *prima facie* case, the Local Board must grant the requested classification in the absence of information tending to disprove the assertions of the registrant. In Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), the Supreme Court noted that a request for classification as a conscientious objector was then not governed by precisely the same rules as those governing ministerial exemptions. The court nevertheless did suggest that much the same burdens exist:

> "Since Witmer stated his beliefs with apparent sincerity, and since we find no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability, we must examine the objective facts before the Appeal Board to see whether they cast doubt on the sincerity of his claim." Id. at 382, 75 S.Ct. at 396.

We may assume for the purposes of this case, without deciding, that unlike courts, a draft board may decide an issue of fact through the probative force of negative credibility. But cf. Pariso v. Towse, 45 F.2d 962, 964 (2d Cir.1930) (L. Hand: "a party must produce af-

firmative proof); Hudiburgh v. Palvic, 274 S.W.2d 94, 99 (Tex.Civ.App.1954); Maniscalco v. Director, etc., 327 Mass. 211, 216, 97 N.E.2d 639, 642 (1951); Boice-Perrine Co. v. Kelley, 243 Mass. 327, 329–330, 137 N.E. 731, 732 (1923); Wallace v. Berdell, 97 N.Y. 13, 21 (1884); Kirby v. President, etc., Delaware & H. Canal Co., 20 App.Div. 473, 476, 46 N.Y. Supp. 777, 780 (3d Dep't 1897). For example, when a registrant says "I believe in God," because he is shifty eyed or hesitates or his palms sweat, the Local Board may, for argument's sake, decide he is lying and his utterance means "I do not believe in God." But there is not the slightest suggestion in the record in this case that demeanor evidence was so relied upon by the Local Board. We may further assume, without deciding, that the single member of the Board who observed the registrant at his "hearing" could report this demeanor observation to other members of the Board. Cf. DeRemer v. United States, 340 F. 2d 712, 716–717 (8th Cir. 1965) ("may properly use subordinates in information-gathering"). There is no such indication of such a report on this record. And, since the Appeal Board decided the case solely upon the written record, there is no basis at all for assuming that it considered the registrant's demeanor. See Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955).

 The Second Circuit in United States v. Corliss, 280 F.2d 808 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167 (1960) recognized the problem presented by a classification based solely upon disbelief of the registrant's sincerity. The Court pointed out that:

> "It would seem to follow that although denial of exemption may be and often is supported by objective facts inconsistent with the claim, denial may also rest on a disbelief in the sincerity of the claim, unaccompanied by any inconsistent facts, provided the disbelief is honest and rational." Id. at 814.

Unfounded assumptions by the Appeal Board or Court as to the demeanor of the registrant are not, however, an "honest and rational" basis for decision. Id.

In Batterton v. United States, 260 F. 2d 233 (8th Cir.1958), the Eighth Circuit seemed to assume that unstated demeanor factors could not support a Local Board's finding. It held that in the case of a conscientious objector who has made a *prima facie* case, the Local Board must build a record tending to disprove this *prima facie* case, or, at the very least, provide a "basis in fact" for such disbelief.

## RIGHT TO APPEAL ON QUESTIONS OF SINCERITY

 In permitting an appeal from the decisions of a Local Board, the regulations governing the Selective Service System provide that the registrant may specify claimed errors. 32 C.F.R. § 1626.12. The opportunity to rebut allegedly incorrect conclusions —here, that defendant was insincere —is essential to a meaningful appeal. See United States v. Purvis, 403 F.2d 555 (2d Cir. 1968). Where no facts or inferences upon which the Local Board's conclusion is based are stated, effective rebuttal is impossible. No advocate can persuasively assert grounds for reversal when the bases for the decision below are unknown. The right of appeal from an administrative decision, guaranteed by the regulations, was in effect denied. See White, Processing Conscientious Objector Claims: A Constitutional Inquiry, 56 Calif.L.Rev. 652, 674 (1968).

## CONCLUSION

To "sustain the denial of a claim on a mere *ipse dixit* of lack of sincerity from the Local Board or the hearing officer would create serious possibilities of abuse." United States v. Corliss, 280 F.2d 808, 814 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960). On the sparse record before us, we perceive no suggestion of a basis for denying conscientious objector status. A contrary conclusion "would make the judicial function a rubber stamp in criminal cases for administrative * * * action." Estep v. United States, 327

U.S. 114, 133–134, 66 S.Ct. 423, 432–433, 90 L.Ed. 567 (1946) (Rutledge, J., concurring).

The indictment is dismissed without prejudice to new proceedings for defendant's induction by the Selective Service System.

So ordered.