UNITED STATES of America
v.
Eugene Henry BRUNELLE.
Crim. No. 6616.

United States District Court,
D. Vermont.
April 9, 1971.

Norman Cohen, Asst. U. S. Atty., Rutland, Vt., for the United States of America.

Duncan F. Kilmartin, Rexford & Kilmartin, Newport, Vt., for defendant.

## OPINION AND ORDER

LEDDY, Chief Judge.

Defendant, Eugene Henry Brunelle, is a resident of Brownington, Orleans County, in the State of Vermont. He was born May 19, 1943. Upon reaching his eighteenth year, defendant, as required by law, registered with Local Board #10 of the Selective Service System, Orleans County, Newport, Vermont. Defendant left school after the eighth grade to work full-time on his father's farm which comprises about 840 acres yielding diversified products. At the time he registered with the Local Board, defendant had already worked four years on the farm. Defendant has always worked on the farm and nowhere else, and he continues to do so.

The factual history of defendant's relation with his local board is crucial to

this case and lengthy as it is, it must be presented in some detail.

Defendant was classified IA on June 20, 1962. He then requested a IIC agricultural deferment and this was denied by the local board on June 20, 1962, because the board felt that defendant was not in jeopardy.

Once again, on February 26, 1964, defendant and his employer-father submitted a Vermont Selective Service Form No. 24 seeking a deferment because of agricultural occupation. Therein, defendant and his employer-father certified the following as then current production: 400 pigs; 325 tons of hay; 475 gallons of maple syrup; and 40,000 board feet of lumber. Also certified was the fact that there were three full-time workers on the farm. These were defendant, his younger brother and his father. Thereafter, the Board voted not to reopen defendant's IA classification stating no reason for the refusal. Defendant's file then found its way to the State Director of the Vermont Selective Service System. Pursuant to 32 C.F.R. 1621.14, State advisory standards may be set to determine manpower needs to aid local boards in ascertaining the merit of a IIC deferment request. The Vermont standards are not found in defendant's file. However, the State Director in a letter to the Vermont State Executive Director of the Vermont Agricultural Stabilization and Conservation Service (A.S.C.S.) referred to the State guide as "Reference—State Memorandum No. 60, Paragraph 3." The Director of Vermont Selective Service noted in the letter that the guide for farm production contained no standards for pigs and hay and requested manpower information on these farm products. The answer of the A.S.C.S. was that this combination (hay and hogs) was unusual in Vermont but that they felt 200 tons of hay per man per year and 200 hogs sold per man per year would apply as a manpower index. Both of these letters are found in defendant's file. Thus, without counting lumber and maple syrup production and relying only on the guide for hay and pigs, the farm on which defendant worked qualified as a 3.5 man farm having only three full-time employees of which defendant was one.

The Vermont Selective Service Director then requested the Local Board in the light of this new information to reconsider defendant's classification. By unanimous vote, the Local Board refused to reopen defendant's classification,[1] because the "present farm operation does not warrant a deferment for two sons."

Subsequently, Roger Whitcomb, County Extension Agent appeared personally before defendant's Local Board. The Board filed Whitcomb's report showing that the Brunelle farm had hogs, hay, pulp, lumber and maple syrup and plans for expansion. As an example, a hay dryer had been purchased to improve the hay product. Whitcomb in his report noted that "the father and the two boys work just as hard as any other farmers in the area and anytime I have been there they are all working."

On March 17, 1965, the Local Board refused again to reopen defendant's classification but allowed him to appeal to the State Appeal Board.[2]

On August 3, 1965, the State Appeal Board reversed the Local Board and granted defendant a IIC deferment effective until August 3, 1966.

The following year on August 3, 1966, defendant's Local Board continued defendant's IIC deferment until August 1, 1967. Farm production remained the same as did full-time employees and in addition there is found in defendant's file a letter from the Vermont State Employment Service Director indicating an extreme scarcity of farm hands for every type of operation but especially so for hog raising operations.

On July 8, 1967, defendant and his employer-father again submitted a VSS

---

1. Such a refusal seems contrary to law. See 32 C.F.R. § 1625.3(a).

2. Deferments of this type may not exceed a year. See 32 C.F.R. § 1622.21(a).

#24 form requesting continuance of defendant's IIC deferment. In the file is found a letter dated July 12, 1967, from the Vermont Commissioner of Employment Security stating: "farm help is at least as scarce as last year in Vermont * * * it would be our considered opinion that if you now have well qualified and experienced employees * * * by all means keep them if you can." In his request for continued deferment, defendant and his father-employer certified that defendant now managed the hog operation. Defendant's Local Board reclassified him IA because "[p]roduction does not warrant deferment as Board felt some was seasonal." The State Appeal Board reclassified defendant IIC, reversing for the second time the Local Board. The deferment was to be effective until March 25, 1968.

Defendant Brunelle and his employer-father filed their last VSS #24 form for continued IIC deferment on February 19, 1968, certifying that defendant managed the hog operation and that production consisted of 400 pigs, 475 tons of hay, 500 gallons of maple syrup and 150 cords of pulpwood with three full-time employees, including in that number, the defendant.

At this time, the Local Board had under consideration the Vermont State manpower guides, as the Clerk of the Local Board on page 42 of defendant's file set out the following:

"200 hogs for 1 man

"200 tons hay 1 man

"1000 gallons syrup 1 man."

Under these guidelines, the production certified in the IIC deferment request made the Brunelle farm a 4.5 man farm at a conservative estimate.

On March 20, 1968, Local Board #10 voted to reclassify defendant IA because: "Only 1 full time operation (hogs) which would require 2 men only. All other operations are seasonal and Board felt that for such small operations someone could be hired on a seasonal basis—rather than defer a boy for a full year."

On April 16, 1968, defendant availed himself of his right to a personal appearance by timely request for such appearance.

The Board recorded the substance of the personal appearance by synopsis stating:

Brunelle, Eugene H.—Personal Appearance
4–22–68

1. Chge in Draft laws — Apr. Bulletin # shown to registrant.
2. Full time farmer. Proof cannot be replaced.
3. Specialize in feeding hogs—selling—growing grain for hogs.
4. If taken away it would effec. whole operation—overhead going up.
5. Have been deferred for 6½ years.—conditions have not chged.
6. Questioned on seasonal aspect of business & agreed pulp cut in fall, hauled out & sold in winter; sugar Spring & then farm summer work-800 acres hayed.
7. Asked if he felt he had any military obligation. Said there are deferments given for farmers, teachers, divinity students & some only slightly handicapped So felt he should be deferred.
8. Left school after 8th grade & has worked on farm ever since because it has been what he wanted to do.
9. Voted 3 to 0 to re-open. Continue 1–A.

On May 17, 1968, defendant's employer-father appealed the IA classification of defendant and a letter from Vermont State employment officials presumably pursuant to 32 C.F.R. 1626.12 was submitted citing scarcity of farm help. In addition, defendant's employer, his father, wrote to the Appeal Board and informed them that he had checked with a local employment official, citing the official's response, that no help was available.

The State Director of Selective Service ordered Roger Whitcomb, County Extension Agent of Orleans County, to re-investigate the matter. Whitcomb's report found in defendant's file reads as follows:

At your request I checked on the case of Eugene H. Brunelle, SSN 43–10–43–65.

The following is the information I secured in answer to your questions.

1. The annual farm production is approximately:

400 hogs (about 75% sold as small pigs)

400–425 tons of hay

500 gallons of maple syrup

125–150 cords of pulpwood

30 tons of straw

500 Christmas trees

2. The workers on the farm are:

Victor Brunelle, Jr.

Armand George Burnelle [sic]

Eugene H. Brunelle

3. The hours worked per day average about 10 each.

The State Director requested Local Board #10 to reconsider defendant's IA classification "on the basis of the data supplied by Mr. Whitcomb" pursuant to 32 C.F.R. 1625.3.

The Local Board reopened but reclassified defendant IA. Defendant and his father-employer each appealed and this time the State Appeal Board, without stating reasons, upheld the Local Board classifying defendant IA on April 25, 1969.

Defendant Brunelle was ordered to report for induction by Local Board #10 on May 14, 1969. He turned 26 on May 19, 1969.

Defendant failed to report for induction and on December 12, 1969, was indicted by the Federal Grand Jury for willful failure to report for and submit to induction in violation of 50 U.S.C. App. § 462(a).

■ Because defendant is under jeopardy of indictment and because he has exhausted all available administrative remedies,[3] his contention that no basis in fact existed for assigning him

a classification of IA is judicially reviewable as a proper defense to this criminal prosecution.[4] See McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

■ On review of a selective service classification, therefore, the sole question for the court is whether "a basis in fact" exists for the classification assigned. Estep v. United States, *supra*. This then is the scope of our review in the case at bar. For better or worse, the courts are not and will not be "super draft boards." Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ In a criminal prosecution, the District Court is bound to review the decision of the highest body within the Selective Service System which passed upon the issue. United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968). Here that highest body was the Appeal Board which was bound to make a *de novo* determination as to defendant's classification. See United States v. Morico, 415 F.2d 138 (2d Cir. 1969); 32 C.F.R. § 1626.26. Yet, the Appeal Board stated no reason for classifying defendant Brunelle IA. Hence, we are bound to decide the issue of whether a "basis in fact" for the decision to classify defendant IA exists in the Selective Service record file of defendant kept by his Local Board. See United States v. St. Clair, *supra*, at 341.

3. Unless there are mitigating circumstances such as are noted in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) exhaustion of administrative remedies is a jurisdictional prerequisite to judicial review. See United States v. Houston, 433 F.2d 939 (2d Cir. 1970). Here, defendant appealed pursuant to 32 C.F.R. 1626.2. No further administrative relief exists under 32 C.F.R. 1627.3 unless there is a dissenting vote on the State Appeal Board which is not the case herein.

4. "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction * * *. *Provided*, that such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." 50 U.S.C.App. § 460(b) (3) (1967) (emphasis in original).

██ The law places upon the registrant the burden of establishing that he falls within a particular classification. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). When uncontroverted evidence supporting a registrant's claim places him within the objective requirements of a particular classification, suspicion or speculation does not permit the Local Board to dismiss such a claim. Dickinson v. United States, *supra*; United States v. Pyrtle, 423 F.2d 772 (8th Cir. 1970).

██ There is also a mandatory classification procedure requiring the Local Board to classify each registrant solely on the basis of the official forms of the Selective Service System and such other written information as may be contained in his file. * * * [and] [u]nder no circumstances shall the local board rely upon information received by a member personally unless such information is reduced to writing and placed in the registrant's file. 32 C.F.R. § 1623.1(b).

Selective Service regulations also explicitly require that the registrant "shall be classified in the lowest class for which he is determined to be eligible * * *" 32 C.F.R. § 1623.2. Thus,

if defendant Brunelle met the objective requirements for the IIC agricultural deferment [5] and there was no evidence in contradiction of his claim for exemption, then no basis in fact existed for classifying defendant in category IA. Dickinson v. United States, *supra*; United States v. Pyrtle, *supra*.

The records of the Local Board establish conclusively that defendant met the objective criteria for a IIC deferment classification. The Local Board, however, repeatedly emphasized the seasonal nature of all the products of the farm except the hogs and refused for that reason to place defendant in the IIC category. However, two facts militate strongly against the Local Board's basis of refusal.

██ First, even if seasonal interruptions in agricultural production warranted refusing the IIC deferment classification, it is established that defendant himself supervised and managed the full-time hog operation. Secondly, seasonal lapses alone are not grounds for refusing the IIC classification. The regulations provide that the registrant must be "but for a seasonal or temporary interruption * * * engaged in [agricultural] activity." 32 C.F.R. § 1622.23(a) (1).

---

5. 32 C.F.R. § 1622.24 states:

Class II-C: *Registrant deferred because of agricultural occupation.*

(a) In Class II-C shall be placed any registrant who is employed in the production for market of a substantial quantity of those agricultural commodities which are necessary to the maintenance of the national health, safety, or interest, but only when all of the conditions described in § 1622.23(a) are found to exist.

(b) *The production for market of a substantial quantity of agricultural commodities should be measured in terms of the average annual production per farm worker which is marketed from a local average farm* of the type under consideration. The production of agricultural commodities for consumption by the worker and his family, or traded for subsistence purposes, should not be considered as production for market. Production which is in excess of that required for the subsistence of the farm families on the farm under

consideration should be considered as production for market.

32 C.F.R. § 1622.23(a) states:

Except as otherwise provided in paragraph (b) of this section, a registrant's employment in industry or other occupation, service in office, or activity in research, or medical, scientific, or other endeavors, shall be considered to be necessary to the maintenance of the national health, safety, or interest only when all of the following conditions exist:

(1) The registrant is, or *but for a seasonal* or temporary interruption would be, engaged in such activity.

(2) The registrant cannot be replaced because of a *shortage of persons with his qualifications or skill in such activity.*

(3) The removal of the registrant would cause a material loss of effectiveness in such activity.

(emphasis added).

The Government would have us dismiss defendant's claim because defendant has not conclusively established that he "cannot be replaced" relying on United States v. Wallace, 435 F.2d 12, 17 (9th Cir. 1970). To this argument, we need only point out that the regulations do not require that the registrant be absolutely irreplaceable but simply that the "registrant cannot be replaced because of a shortage of persons with his qualifications * * *" 32 C.F.R. § 1622.23(a) (2). Defendant's file conclusively establishes that a critical scarcity of farm help exists in Vermont especially in the area of hog raising. The local regional office of the Vermont Department of Employment Security informed defendant's employer-father that no agricultural help was available, and the Local Board in recording defendant's personal appearance noted that there was "proof cannot be replaced." This is sufficient to bring defendant within the provisions of 32 C.F.R. § 1622.23(a) (2). See United States v. Pyrtle, *supra*, at 775 relying on the basis of "a shortage of dependable farm labor * * *"

The Supreme Court in Dickinson v. United States requires that we search the record for "some affirmative evidence to support the local board's overt or implicit finding * * *." 346 U.S. at 396, 74 S.Ct. at 157. A careful search of the record reveals absolutely no evidence or basis in fact to support the IA classification which the Local Board assigned to defendant nor any legal basis in fact for denying defendant the IIC deferment for which he properly and legally applied.

The Court sympathizes with the difficult task of the Local Board in difficult times. The Selective Service regulations are complex but nevertheless must be followed in each case.

Accordingly, for the reasons stated herein the indictment outstanding against the defendant is hereby quashed as no basis in fact exists for the IA classification assigned to the defendant or for denying him, upon the facts found in his file, the IIC deferment for which he applied.