**UNITED STATES of America,**
**Plaintiff,**

v.

**Roger Eugene PERSALL, Defendant.**
**Cr. No. 12142–N.**

United States District Court
M. D. Alabama, N. D.
July 9, 1969.

218

Ben Hardeman, U. S. Atty., and Jack B. Patterson, Asst. U. S. Atty., Montgomery, Ala., for plaintiff.

Asa C. Hartwig, Cullman, Ala., and Earl Gillian, Montgomery, Ala., for defendant.

## FINDINGS, CONCLUSIONS AND ORDER

JOHNSON, Chief Judge.

The defendant, Roger Eugene Persall, was indicted in this District September 5, 1968, for violating 50 U.S.C. App. 462 in that he did, on or about the 12th day of January, 1968, unlawfully, wilfully and knowingly fail and neglect to perform a duty required of him under the Universal Military Training and Service Act by failing and neglecting to comply with an order of his Local Board at Cullman, Alabama, to submit to induction into the Armed Forces of the United States of America. The defendant by and with the consent of the United States waived a jury trial, and

the case was tried by the Court without a jury.

Roger Eugene Persall registered with Local Board 22, Cullman, Alabama, in May, 1966. In completing his classification questionnaire at that time, Persall signed Series VIII of the form, thereby claiming to be a conscientious objector and requesting a special form for conscientious objectors (Selective Service Form No. 100). Upon visiting the local Selective Service office for the purpose of submitting or obtaining one of the Selective Service forms, Persall stated to an Assistant Clerk of the Board that he opposed combat training and that he was opposed to combatant service.[1]

1. Because of the significance and critical nature of this conversation to this case, the testimony of the Assistant Clerk relating this conversation with Persall has been transcribed and was as follows:

\* \* \* \* \*

Q Mrs. Hassell—at the time that the defendant registered with the Local Board, were you present?

A Yes.

Q Did you personally handle his registration—

A Yes, sir.

Q —at that time?

A Uh, huh.

Q At the time he registered, did he sign a statement of conscientious objection?

A Yes, sir.

Q Did you have a conversation with the defendant—

A Yes, sir; I did.

Q —about the claim of conscientious objection?

A Yes, sir.

Q Tell us what that conversation was, please.

MR. HARTWIG: We object, your honor.

THE COURT: I will admit it.

WITNESS: Go ahead?

MR. HARTWIG: On the basis that it is an admissible admission, sir?

THE COURT: Oh, yes; on the—on the question of—on all the issues. I think it is admissible on all the issues, any of the issues; certainly as to whether willful, knowing, and "basis in fact"; I think it is admissible.

MR. HARTWIG: All right, sir.

THE COURT: Go ahead.

MR. HARTWIG: Sir, could we ask that he—okay.

THE COURT: You want to make any other statement?

MR. HARTWIG: No; that is all right, sir.

A I asked the registrant if he was opposed to combatant or non-combatant service, and he said that he was opposed to carrying a gun; that he would go to service, but he would not carry weapons, and that he was opposed to combatant service.

Q Now, is a summary of that statement in the Selective Service file?

A Well, no; not until he was given a questionnaire to complete at the time of registration about his conscientious objector claim, and then when it came back, then we had another conversation.

Q Now, was he provided with this special form for conscientious objection?

A Yes, sir.

Q And did the Board receive this special form?

A Yes, sir; we did.

Q When did the Board receive that?

A It was received on June 1 of '66.

Q Now, at that time, what exemption was claimed, if any?

A Well, he signed Series B; that stated that he was opposed to participation in war in any form and further conscientiously opposed to participation in non-combatant training and service, and, therefore, he claimed exemption from both combatant and non-combatant training and service in the armed forces.

Q After the Board had received this special form completed, did you have another conversation—

A Yes, sir.

Q —with the defendant? And when did that conversation take place?

A The same day as we received the questionnaire, June 1, '66.

Q And where did the conversation take place, Mrs. Hassell?

A It was with the telephone—it was a telephone conversation between myself and the registrant.

Q Did you call him or—

A Yes, sir.

Q —he call you?

A I called him.

Q Did you call him at a number furnished by him?

A Yes, sir; it was—at the time he registered, there was a place for him to

The special form was completed by Persall and returned to the Local Board on June 1, 1966; the completion of this special form reflected that the defendant claimed to be opposed to both combatant and non-combatant training and service (Selective Service Form 150). When discussing with Persall what the draft board's Assistant Clerk interpreted to be a change in his attitude, the Assistant Clerk was impressed that Persall had changed his attitude and made a memorandum of the substance of Persall's oral statements to her. This memorandum became a part of the Selective Service file (Selective Service Form 119). On June 23, 1966, the Local Board classified Persall in Class 1–A–O; this classification recognized him as a conscientious objector but made him subject to non-combatant military service; notice of classification to this effect was given the registrant. Persall did not appeal from this classification. On June 19, 1967, the Local Board mailed Persall an Order to Report for Armed Forces Physical Examination, which ordered him to report for such examination on July 6, 1967. After reporting as instructed, Persall was found acceptable for induction. On December 12, 1967, Persall was ordered to report for induction on January 11, 1968. Persall reported, as ordered, on January 11, 1968, but on the following day refused to be inducted into the Armed Forces of the United States. The indictment and prosecution followed.

■ The law is well settled that only when a registrant has timely resorted to the administrative remedies of a personal appearance before the Local Board and appeal, and has been ordered by his Board to report for induction, and has obeyed that order, are the doors of the court open to him to test the legality of his classification. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Barnes v. United States, 387 F.2d 649 (5th Cir. 1967); DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968). However, this has been interpreted to mean that while the courts are not to weigh the evidence to determine whether the classification by the local boards was justified, the orders may still be examined to ascertain whether a basis in fact exists for the classification. If no "basis in fact" is found to exist, then the Board is considered to be without jurisdiction, and the classification is considered void. Estep v. United States, 327 U.S. 114, 66

list his telephone number, and I called him at that number.

Q What conversation occurred at that time, Mrs. Hassell?

A Well, I identified myself to him and told him that we had received his questionnaire, his conscientious objector questionnaire, and that I was wondering if he had signed that particular series in error, because of the fact that when he registered, he said that he would go in service, but as—in—he would not participate in combatant— combatant training; and he said well, that since he registered, that he had talked with some ministers and who had advised him, and that after thinking it over, that he felt like he was— his feelings applied to the series that he signed on the questionnaire. And he said that at the time he registered with Selective Service, that he was mixed up, but since that time, he had been straightened out on a few points.

Q Well, did he say who straightened him out on these points?

A Well, he—at one time, he said that these ministers, several ministers, had straightened him out on several things and had advised him to sign the Series that he signed on the questionnaire.

Q Subsequently, Mrs. Hassell, was the defendant classified?

A Yes, sir; uh, huh.

Q And when did that take place?

A He was classified on June 23, 1966.

Q And what classification was given him at that time?

A Class 1–A–O.

Q Was notice of that classification forwarded to the defendant?

A Yes, sir; on the same date, June 23, 1966.

Q Was that done by mail?

A Yes, sir.

S.Ct. 423, 90 L.Ed. 567 (1946); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Greer v. United States, 378 F.2d 931 (5th Cir. 1967); Foster v. United States, 384 F.2d 372 (5th Cir. 1967).

██ Therefore, the sole issue presented in this case is whether or not there was a "basis in fact" for Persall's 1–A–O classification. What constitutes a "basis in fact" in conscientious objector cases was discussed in Witmer v. United States, supra, in which the Supreme Court stated that the real test is the registrant's sincerity in objecting, on religious grounds, to participation in war in any form. The Supreme Court made it clear that this is purely a subjective question, and it also made it clear that no objective fact is relevant if it fails to shed light upon that sincerity or the lack of it.

A court's duty in a case such as this one was also discussed by the United States Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). In Seeger the Supreme Court held that to be entitled to classification as a conscientious objector, it is necessary only to have a conviction based upon religious training and belief, and this would include all sincere religious beliefs which are based upon a Power or Being, or upon a faith to which all else is subordinate or upon which all else is ultimately dependent. The standard to be applied in "basis in fact" cases was also discussed by the Fifth Circuit Court of Appeals in Riles v. United States, 223 F.2d 786 (1955). In that case it was held that the denial of the conscientious objector classification was without basis in fact and could not stand. The decision of a prior Fifth Circuit case, Williams v. United States, 216 F.2d 350, was cited with approval. In the Williams case it was held:

"Congress in its wisdom considered it more essential to respect a man's religious belief than to force him to serve in the armed forces. The draft boards and the Courts are bound to carry out that policy."

Quoting Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), the Fifth Circuit in Williams also stated:

"The Supreme Court has simplified the duty of courts in cases of this kind. 'The task of the courts in cases such as this is to search the records for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities.' * * * The District Court stated that it found such evidence, but failed to state what it was. After a diligent search, we have found none."

With these controlling legal principles in mind, we now consider the evidence and search the record. The defendant Persall, a young man born in May, 1948, and residing all of his life in the hills of northwest Alabama, graduated from high school in Cullman, Alabama, in May, 1966. The only employment he has ever engaged in and the employment he was pursuing at the time he received his notice to report for induction is that of a farm machinery mechanic. His employer was and continues to be his father, Roland E. Persall, Route 10, Cullman, Alabama. The defendant has never been convicted of any criminal offense. His religious beliefs and convictions to the extent that they are pertinent here were set out by Persall when he completed for the Selective Service System a statement of personal history as follows:

"I am a Christian, and according to the Bible I can have no part in any form of military service. I cannot violate my conscience and the Bible by doing anything which will interfere with the way I am now worshipping my God. Matthew 6:33—'But seek ye first the Kingdom of God, and his righteousness; and all these things shall be added unto you.'"

Other written reasons were advanced to the Board by Persall as to why he could not submit to induction into the armed forces. They were expressed in the following manner:

"REASONS WHY I CANNOT BE INDUCTED INTO THE ARMED FORCES:

| | |
|---|---|
| Exodus 20:13 | "Thou shalt not kill." |
| Romans 13:9 | "Thou shalt not kill * * *" etc. |
| Matthew 19:18 | "Thou shalt do no murder * * *" etc. |
| Acts 5:29 | "We ought to obey God rather than man." |
| Matthew 5:21 | "Ye have heard that it was said by them of old time, Thou shalt not kill: and whosoever shall kill shall be in danger of the judgment:" |
| Mark 10:19 | "Thou knowest the commandments: Do not commit adultery, Do not kill * * *" etc. |

## DUTIES OF A CHRISTIAN

| | |
|---|---|
| Romans 12:1-2 | "I beseech you therefore, brethren, by the mercies of God, that ye present your bodies a living sacrifice, holy, acceptable unto God, which is your reasonable service. And be not conformed to this world; but be ye transformed by the renewing of your mind, that ye may prove what is that good, and acceptable, and perfect will of God." |

## WORSHIP

| | |
|---|---|
| Matthew 6:33 | "Seek ye first the kingdom of God and his righteousness and all these things shall be added unto you." |
| Acts 20:7 | "And upon the first day of the week when the disciples come together to break bread Paul preached unto them * * *" etc. |
| I Cor. 16:2 | "Upon the first day of the week let everyone lay by him in store, as God hath prospered him, that there be no gatherings when I come." |
| Hebrews 10:25 | "Not forsaking the assembling of ourselves together as the manner of some is but exhorting one another and so much the more as we see the day approaching." |
| Matthew 4:10 | "Thou shalt worship the Lord thy God, and him only shalt thou serve." |

———◆———

In completing that part of Selective Service Form 150 requesting Persall to describe the nature of his belief upon which he based his claim of conscientious objection to participation in war of any form and request for classification as such, he wrote:

"We are to obey God rather than man. Acts 5:29. I have duties in the church, leading singing, waiting on the table, and Bible reading."

On the same questionnaire he explained in response to the question from whom or from what source had he received

the training and acquired the belief which is the basis of his claim, as follows:

"I have been taken to church since I was an infant every week. I was taught the Bible and the right way from the time I was big enough to know anything."

In response to the question, "Under what circumstances, if any, do you believe in the use of force?" Persall responded:

"I believe in no kind of force. Matthew 5:39, Matthew 5:44–45, Ephesians 6:11–18."

In completing the same form he described his actions and behavior which demonstrated the consistency and depth of his religious convictions as follows:

"I attend church services every week. I have never been in any kind of trouble. I make sure the Lord comes first in my daily activities. Matthew 6:33."

In explaining the conversation and incident with the draft board's Assistant Clerk, which conversation and incident constitutes the only basis for his classification, Persall testified:

"I registered with the Local Draft Board No. 22 on May 23,1966. I asked for forms for myself to be filled out to claim the exemption as a conscientious objector. I did sign the necessary forms requesting this form. I subsequently filled out a conscientious objector form. I stated in that form my religious beliefs. My religious beliefs haven't changed at any time between the time I signed this form and the present time. My religious beliefs and training did not change any time between the time I signed the form 150 and the date I first went to the Draft Board to fill out my classification questionnaire. I am conscientiously opposed to war in any form. On the first day that I went to the Draft Board, I was not asked to set out my religious beliefs and training or to tell the Board my religious beliefs and training. I was never asked to come before the Board and set out my religious beliefs and training. On my classification form SS–150, I signed under Series I, paragraph B, which states as follows: 'I am by reason of my religious training and belief conscientiously opposed to participation in war in any form, and I am further conscientiously opposed to participation in non-combatant training and service in the armed forces. I, therefore, claim exemption from both combatant and non-combatant training and service in the armed forces.' I intended to sign under that paragraph. I wrote to the Board on December 14 and asked for a classification or reconsideration or reopening of my case, and I asked for civilian employment whereby I could practice my religion in certain aspects; there had been no change or alteration in my opposition to war from the date I registered until the date that I signed that letter. I did not intend that letter to set forth the grounds upon which I was going to be classified as 1–O."

The evidence is uncontradicted that Persall and the other members of his family belong to and actively participate in the Crossroads Church of Christ, Route 10, Cullman, Alabama. This participation has been throughout the defendant's lifetime.[2] The evidence further reflects that the defendant's father and grandfather are and have been throughout the defendant's lifetime, conscientiously opposed to war in any form.

[redacted] This Court recognizes that it is not for the courts to sit as super draft boards substituting their judgment on the weight of the evidence for that of

2. The Principal of one of the Cullman City Schools testified on this point:

"I have had contact or am familiar with certain religious beliefs that he has held for many years. These same religious beliefs are held by his family. I would say that they are beliefs that are held in depth by him. I would definitely say that they are sincere beliefs, and valid. I believe that the registrant is conscientiously opposed to war in any form, and that he is opposed to war in any form because of his religious training and beliefs."

the Selective Service Boards. This Court further recognizes that in cases such as this one the classification of the Selective Service System is to be overturned *only* if it has no basis in fact. However, careful consideration of all of the evidence presented in this case including the Selective Service System's records leads this Court to the clear conclusion that there is no factual basis for the local board's classification of the defendant. The defendant's sincerity and the depth of that sincerity is shown throughout this record. The only basis upon which the Board attempts to justify its classification is the conversation that Persall had with the Assistant Clerk of the Cullman Selective Service System Board that is set out above in footnote 1. Such does not constitute affirmative evidence to support the rejection of the claimed exemption. This testimony fails to shed any light upon Persall's sincerity or lack of it or upon the extent or depth of his religious convictions. A case startlingly similar from a factual standpoint to the case now presented to this Court is Kessler v. United States of America, 406 F.2d 151 (5th Cir. 1969); in that case Judge Coleman upon behalf of the Court wrote:

> "To be precise about it, the disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which substantially blurs the picture painted by the registrant and thus casts doubt on his sincerity, Batterton v. United States, 8 Cir., 1958, 260 F.2d 233."

Upon consideration of the evidence in this case and upon consideration of the foregoing findings, this Court now concludes that the denial of conscientious objector classification to this registrant exempting him from both combatant and non-combatant military service was wholly without basis in fact and for that reason the defendant is entitled to be acquitted.

Accordingly, it is the Order, Judgment and Decree of this Court that Roger Eugene Persall be and he is hereby found not guilty of the charge of on or about January 12, 1968, unlawfully, wilfully, and knowingly failing to perform a duty required of him under the Universal Military Training and Service Act in that he failed and neglected to comply with an order of his Local Board at Cullman, Alabama, directing him to submit to induction into the Armed Forces of the United States of America.

Nothing said by this Court in this opinion and order is to be used to prevent or delay the Selective Service System from requiring Roger Eugene Persall to perform civilian duty of national importance in lieu of induction into the Armed Forces of the United States.