**UNITED STATES of America,
Plaintiff,**

v.

**Thomas Owen NORMAN, Jr., Defendant.
No. 14095.**

United States District Court
M. D. Tennessee,
Nashville Division.

April 12, 1968.

Alfred Knight, III, Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

Ralph K. Helge, Pasadena, Cal., for defendant.

## MEMORANDUM

WILLIAM E. MILLER, Chief Judge.

In this criminal action the defendant was tried to the Court on March 8, 1968, a jury being duly waived, on an indictment charging him with willfully and knowingly neglecting to perform a duty required of him under the Universal Military Training and Service Act in that he failed to comply with an order of his local draft board to submit to induction into the armed forces of the United States. At the trial defendant moved to suppress the admission of his Selec-tive Service file into evidence. At the close of the Government's proof, and again at the end of the entire case, defendant moved for judgment of acquittal.

On March 1, 1963, defendant registered with Local Board No. 62 in Jasper, Tennessee, as he was required by statute to do, making no indication that he possessed the beliefs of a conscientious objector. On October 17, 1963, the Local Board gave defendant a I-A classification. Four days later defendant informed the Local Board that he was a conscientious objector and requested Selective Service System Form 150, the special form for conscientious objectors. Defendant filled out and returned the form and on November 18, 1963, the Local Board gave him a I-A-O classification which qualified him for noncombatant military service only.

Following his I-A-O classification, defendant by letter informed the Local Board that his religious beliefs were such that he could not participate in war or come under military authority in either a combatant or a noncombatant capacity. He asked that his classification be reconsidered, that he be allowed a personal appearance before the Local Board, and that he be granted a I-O classification.

Defendant appeared before the Local Board on January 14, 1964, stating to the members that he did not at that time belong to any religious organization but that he had recently repented and would soon be baptized and become a member of the Radio Church of God. He indicated that he had obtained his religious views during the previous two years from literature published by the Radio Church of God and from the radio broadcast it sponsored. He further informed the Local Board that he based his claim as a conscientious objector upon the Bible, it being his belief that the Bible taught against participation in warfare.

At the conclusion of the hearing the members of the Local Board concluded that the defendant was not entitled to a I-O classification. On the day this decision was made the defendant by letter

informed the Local Board that he intended to appeal. On January 16, 1964, defendant's Selective Service System file was forwarded to the State Director of the Selective Service System preparatory to having the case considered by an appeal board. Included within the file was the Local Board's summary of the defendant's January 14 hearing. On January 20 the defendant submitted in writing to his Local Board his summary of the January 14 meeting. Defendant's summary was not forwarded to the State Director or the Appeal Board for inclusion within defendant's file and was thus not considered by the Appeal Board.

Defendant's file was forwarded from the State Director to the East Tennessee Board of Appeals which, in turn, referred the claim, as is required by 50 App.U.S.C. § 456(j), to the Department of Justice for inquiry and hearing. Subsequently the Federal Bureau of Investigation conducted an investigation of defendant's claim for the Department of Justice. Interviews were held with approximately fourteen people including defendant's mother, former school teachers, neighbors, a law enforcement officer, a former minister, and an official of the Radio Church of God. Many of those interviewed stated that defendant was a shy and retiring person, that they were unaware of his conscientious objector beliefs, but that they believed him to be a sincere and law abiding person.

Defendant appeared before the Department of Justice Hearing Officer on December 3, 1965. The Hearing Officer concluded that defendant was evasive and insincere in his beliefs. He stated that in explaining his religious views the defendant was repeating words someone else had put in his head and not his own beliefs, that defendant could not articulate his religious beliefs without reading from notes, that at the time of the interview defendant had still not become a member of the Radio Church of God, and that he had not determined before going to work for the engineering company that employed him whether the

company was contributing to the war effort.

On April 13, 1966, approximately twenty-seven months after receiving defendant's file, the Department of Justice recommended to the Appeal Board that defendant receive neither a I-O nor a I-A-O classification. The Department of Justice, in concluding that defendant had failed to sustain the burden of proving his conscientious objector claim, based its recommendation on the F.B.I. Resume of Inquiry and on the report of the Hearing Officer.

On May 16, 1966, defendant filed with the Appeal Board his reply to the Department of Justice recommendation. Defendant stated that at his appearance before the Hearing Officer he had relied on notes because he was nervous at the hearing and that this was not an indication that he was blindly accepting what someone else had stated. He also informed the Appeal Board that the reason he had not been baptized and become a member of the Radio Church of God was that the church required a person to prepare and study before being baptized. He further stated that his employment did not in any way contribute to the war effort.

Following the recommendation of the Department of Justice and the reply by defendant, the Appeal Board on May 19, 1966, classified defendant I-A.

During the long interval in which his appeal was pending, defendant moved to Chattanooga, Tennessee, and on June 28, 1965, became an employee of Combustion Engineering, Inc., as a trainee working to become a skilled welding craftsman. On March 1, 1966, the company filed an occupational deferment request with defendant's Local Board stating that the company was engaged in the manufacture of steam generating and nuclear reactor vessels and that it was "extremely difficult to find capable people to enter this training program." In acting upon and denying this application for an occupational deferment, the Local Board did not formally meet. The minutes of the

Local Board indicate that the Clerk talked with the chairman of the Local Board and that he informed her that he had discussed the matter with the other board members and that all of them felt the request should be denied.

On September 7, 1966, defendant received a notice to report for induction. Defendant appeared at the induction center in Nashville, Tennessee, on September 26, 1966, as he had been ordered to do, but when his name was called, he refused to step forward to submit himself for induction.

The first motion made by defendant in this action is to suppress the admission of all or parts of his Selective Service file into evidence. While the defendant makes several contentions under this motion, the only one which the Court believes necessary for discussion is the contention that portions of the file were illegally obtained in that the defendant was not informed that he had a right to remain silent, that anything he said could be used against him, and that he had a right to a lawyer, advisor, or government appeal agent. Defendant contends that the failure to give him these warnings violated rights secured to him by the Fifth and Sixth Amendments to the Constitution and that the portions of the file obtained in violation of these rights cannot be admitted into evidence. The parts of the file objected to under this contention include the recommendation of the Department of Justice to the Appeal Board, the I-A classification of the Appeal Board, and the order for defendant to report for induction. If this contention is sustained, the Government would be precluded from proving a valid order to report for induction.

■ Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held that the prosecution at a criminal trial may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), extended this holding to cases in which juveniles are charged as delinquents. It is clear, however, from a reading of these decisions that the constitutional requirements enunciated there apply only when a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda v. Arizona, *supra* at 444, 86 S.Ct. 1602. For the rules to come into play an investigation must be focused on an accused. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

In *Gault,* as defendant contends, the Supreme Court did extend the *Miranda* rules to non-criminal proceedings. In that case, however, the juvenile who had been before the court on the question of whether he should be held as a delinquent had been taken into custody by the Arizona officials and "had, in effect, been arrested." In re Gault, *supra* at 5, 87 S.Ct. 1428. While the *Miranda* rules do apply to certain non-criminal proceedings, the requirement that the person be in custody or otherwise deprived of his freedom of action is still present.

■ In the instant case the defendant at the time he alleges his rights were infringed was not in custody and no investigation had been focused upon him as an accused. Defendant contends that while he was not in custody, he was being deprived of his freedom of action in a significant way and, accordingly, the constitutional rules should apply. The Court is of the opinion, however, that the defendant, in appearing before the Local Board and the Hearing Officer in an attempt to bring himself within the conscientious objector exemption privilege granted by Congress, was of his own volition exercising rights granted to him as a registrant in the Selective Service System. In this situation he was actually exercising freedom of action rather than being deprived of it, and the rules of *Miranda* and *Gault* do not apply.

For the reasons stated the Court is of the opinion that defendant's contention is without merit and that the motion to

suppress the admission of defendant's Selective Service file into evidence should be overruled.

Under his motion for judgment of acquittal defendant makes several contentions. He alleges first that there was no basis in fact for denying his conscientious objector claim. The Supreme Court has held that judicial review of a Selective Service System classification is very limited in nature. A court may not sit as a super draft board, substituting its judgment for that of the Selective Service boards and agencies. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). Nor is a court to look for substantial evidence to support a classification or denial of a classification. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). A classification may be overturned only if it has no basis in fact. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Brooks, Cr. No. 14,126 (M.D. Tenn. Mar. 22, 1968).

Defendant contends that there were no facts before the Appeal Board incompatible with his claim as a conscientious objector. In determining whether the denial of a conscientious objector claim has a basis in fact, the Supreme Court said in *Witmer, supra* at 381–382, 75 S.Ct. at 396:

[T]he registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is "affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *." Dickinson v. United States, supra, 346 U.S. at page 396,

74 S.Ct. at page 157. * * * If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith.

In this case both the Local Board and the Department of Justice determined that defendant was insincere in his alleged beliefs. The question thus becomes whether there was evidence from which some inference of insincerity or bad faith could have been drawn. Defendant's Selective Service file reflects that he did not ask for a conscientious objector classification when he first registered under the Selective Service System on March 1, 1963, but that he did make such request seven months later on October 21, 1963, immediately after he was classified I-A. Defendant was not at that time a member of any religious organization. When he appeared before the Department of Justice Hearing Officer over two years later on December 3, 1965, defendant had still not been baptized nor had he joined the Radio Church of God whose beliefs he professed. The Hearing Officer stated that defendant was evasive upon being asked why he had not done so. Before the Hearing Officer defendant was not able to articulate his religious beliefs without reading from notes, and he could not explain why he had accepted employment at an engineering firm without first inquiring whether the company was contributing to the war effort. Further, of all the people interviewed by the Department of Justice, only defendant's mother and one teacher were aware that he had any religious objection to war, and the latter did not know what his views were other than that he conscientiously objected. As a result of these facts, the Department of Justice recommended that defendant not be classified either I-O or I-A-O, and the Appeal Board acted accordingly.

■ The Court is of the opinion that these facts, viewed together; provide a basis in fact from which the Appeal Board could have determined that defendant was not sincere and thus not entitled to a I-O or I-A-O classification.

Defendant, in his brief, attempts to refute each one of these facts. Without doubt there is in the defendant's file other evidence contrary to some of the facts set forth above and there may be an explanation for some of the others, but, nevertheless, the Court must find, under its limited scope of judicial review, that these facts indicate that there was a basis in fact in defendant's file from which the Appeal Board could give defendant a valid I-A classification.

Defendant also contends under his motion for judgment of acquittal that the Local Board's handling of the request for an occupational deferment submitted by his employer Combustion Engineering, Inc., denied him due process of law. This request for an occupational deferment was submitted by defendant's employer while his application for a conscientious objector classification was on appeal. In denying the application the Local Board did not formally meet, although the chairman of the board did discuss the matter with the other two board members. He then informed the clerk that all of them were of the opinion that the application should be denied. Defendant contends that his right to due process of law was violated by the failure of the Local Board to convene formally and consider the occupational deferment request.

To sustain this contention defendant relies upon 32 C.F.R. § 1604.56 which states in pertinent part that "[a] majority of the members of a local board shall constitute a quorum for the transaction of business. A majority of the members present at any meeting shall decide any question or classification. * * *" Defendant's contention is that this regulation contemplates that no action can be taken by a local board except at a formal meeting and that a failure to comply with this regulation constitutes a violation of due process of law.

The Court is of the opinion that the failure of the Local Board to meet formally does not under the facts of this case constitute a violation of due process of law. An occupational deferment is a privilege which to be obtained must be expressly requested either by a registrant or by his employer. 32 C.F.R. § 1625.2. The regulations provide:

Each classified registrant and each person who has filed a request for the registrant's deferment shall, within ten days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification such as * * * any change in his occupational * * * status. * * * 32 C.F.R. § 1625.1(b).

Defendant here did not comply with this regulation by informing the Local Board within ten days of his employment by Combustion Engineering, Inc., as he was required to do regardless of whether or not he intended to apply for an occupational deferment. Over eight months elapsed before the Local Board was informed of defendant's change in occupational status and before the deferment request was made by Combustion Engineering. The failure of defendant to comply with the ten day time period results in a waiver of the right to a deferment based upon facts which should have been reported in compliance with the regulation. Porter v. United States, 334 F.2d 792 (7th Cir. 1964); Williams v. United States, 203 F.2d 85 (9th Cir. 1953). Cf. Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1956).

There is yet another reason why defendant cannot prevail on this contention. The regulations provide:

The local board may reopen and consider anew the classification of a registrant * * * if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification. * * * 32 C.F.R. § 1625.2.

The duty of the Local Board under this regulation when it received the request from defendant's employer was not to reconsider defendant's draft status but to decide whether a reconsideration

of his status was justified. For the Local Board to reopen his classification upon the employer's request for an occupational deferment, the employer had to allege facts which, if true, would entitle defendant to the deferment. The regulations provide that an occupational deferment may be granted only if the registrant is either (1) a worker whose skill and qualifications are such that he cannot be replaced or (2) an apprentice participating in an approved apprentice training program. 32 C.F.R. § 1622.23. Defendant did not come within the first category because Combustion Engineering did not allege that he could not be replaced. Nor did he fall within the second category since the letter did not attempt to establish that defendant was an apprentice engaged in an approved apprentice training program. Therefore, the Local Board found, and the regulations required it to so find, that the alleged facts did not, even if true, justify an occupational deferment for defendant.

 Defendant claims that this decision by the Local Board in refusing to reopen his classification denied him due process of law because it was not made at a formal meeting. While the regulations may contemplate that draft boards conduct their business at formal meetings, the failure of a board to do so is not in itself sufficient to indicate a denial of due process of law where, as here, the board has considered the matter and has made a decision consistent with the regulations. Any procedural irregularity which may have occurred did not result in prejudice to defendant and did not attain to the gravity of a denial of due process. Porter v. United States, *supra* at 795.[1] As the Government asserts in its brief, the due process clause does not automatically raise procedural regulations for draft boards to the status of constitutional requirements. To defend this prosecution on a procedural basis, the defendant must show that the procedure employed was fundamentally unfair and that it deprived him of some substantial right. Here the members of the Local Board considered the question presented to them and rendered a unanimous decision against defendant. Fundamental fairness required no more and no less than this adequate consideration by the Local Board members of Combustion Engineering's request.

To support his contention on this matter defendant relies upon United States v. Nelson, Cr. No. 45202 (E.D.N.Y. Mar. 19, 1958) (apparently not reported), where it was held that the denial of a conscientious objector classification request as a result of a canvass of all board members taken over the telephone by the clerk of the board who read to each member the defendant's letter did not accord defendant the kind of process contemplated by the regulations. In that case, unlike here, there was no evidence that the board members had ever considered together defendant's request. Also, defendant had not there waived any right to be reclassified. To the extent, however, that the case may be considered to support the defendant's contention, this Court respectfully disagrees for the reasons stated above and on the basis of the authorities cited.[2]

1. Defendant contends in his reply brief that *Porter* is inapplicable to the instant case because there the registrant had filed information with his local board after the induction order had issued while here the deferment information was filed before issuance of the induction order. Defendant is correct in asserting that this factual difference between the two cases exists and that as a result of this difference the local board in *Porter* had to apply a different standard from that applied by the board in this case in determining whether to reopen the classification. The issue, however, in both cases is whether a local board in deciding whether to reopen a classification has to make such decision at a formal meeting. The particular standard that any board has to apply in making this decision is irrelevant to this issue. The question is whether in making the decision and in applying the standard—regardless of what the standard is—a formal meeting has to be held.

2. Defendant also cites as authority for his contention United States v. Adrogna,

Defendant further contends under his motion for judgment of acquittal that the failure of his Local Board to transmit to the Appeal Board his summary of his personal appearance before the Local Board denied him due process of law. Defendant sent this summary to the Local Board six days after submitting his notice of appeal and four days after the clerk had transmitted his file to the State Director. The summary included defendant's version of what occurred at his hearing before the Local Board and contained a full description of defendant's religious views and affiliations.

The regulations provide:

The person appealing may attach to his appeal a statement specifying the matters in which he believes the local board erred, may direct attention to any information in [his] file which he believes the local board has failed to consider or to give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in [his] file. 32 C.F.R. § 1626.12.

The Court is of the opinion that here again while a minor procedural irregularity may have occurred, no prejudice resulted to defendant and the irregularity did not attain to the gravity of a denial of due process. Defendant's religious views and affiliation were described in detail in many other documents contained in his file, and he was given ample opportunity to state his beliefs before the Hearing Officer. Also, defendant was given an opportunity to rebut the official summary of his personal appearance hearing, and he did so in a letter mailed to the Appeal Board on May 16, 1966. Since all the information in defendant's personal appearance summary was presented to the Appeal Board in one manner or another, the failure of the Local Board to transmit the summary to the Appeal Board did not result in prejudice to defendant and did not constitute a denial of due process of law.

The Court has examined the remaining contentions of defendant under his motion for judgment of acquittal, as well as the authorities cited in support thereof, and is of the opinion that they are without merit.

For the reasons hereinbefore stated, judgment will be entered denying defendant's motion to suppress the admission into evidence of his Selective Service file, denying the motion for judgment of acquittal, and finding the defendant guilty as charged.

Cr. No. 26196 (S.D.Calif.1958) (apparently not reported) and In re Shapiro, 35 L.W. 2701 (D.N.J.1967) (apparently not otherwise reported). The first of these cases has not been made available to the Court for its consideration. The second involves the question of whether a defendant's rights were violated when he was classified I–A without a quorum of board members present and without a majority voting for the I–A classification. This is a different contention than the defendant's contention here that a violation of due process of law occurs when a board fails to meet formally to consider a classification request.