Victor L. STREIB, Plaintiff,

v.

Melvin R. LAIRD, Secretary of Defense, et al., Defendants.

Civ. No. 4057.

United States District Court, S. D. Ohio, E. D.

May 24, 1971.

Victor L. Streib, pro se.

William W. Milligan, U. S. Atty. for Southern District of Ohio and Robert Steinberg, Asst. U. S. Atty. for Southern District of Ohio, for defendants.

OPINION

CARL B. RUBIN, District Judge.

Petitioner brings this action pursuant to provisions of 28 U.S.C. § 2241. He seeks a Writ of Habeas Corpus to obtain his discharge from the United States Air Force.

I

In November, 1962, petitioner enlisted in the United States Air Force for a period of four years active duty and two years reserve duty. He served on active duty from November, 1962, through June, 1965, a total of two years and five months. During that time he completed basic military training and training at an Air Force Technical School. From May of 1963 through June of 1965 he was assigned to units in the Strategic Air Command. In June, 1965, at petitioner's request and with the rank of Airman 3d Class he was accepted into the Airmen's Education and Commissioning Program. He attended Auburn University from June, 1965, until graduation, December, 1966. During this time petitioner received Air Force active duty pay and allowances of $7,888.76, plus $1,258.89 for tuition and books. After graduation, petitioner attended the Air Force Officers Training School, Lackland Air Force Base, Texas. In March 1967, he was appointed a Second Lieutenant and assigned as a procurement officer to the Munitions Division of the Aeronautical Systems Division, Wright-Patterson Air Force Base. This tour of duty continued until

June, 1968. In December, 1967, petitioner applied for excess leave to attend Indiana University Law School and agreed thereby to accrue additional duty commitments.[1] This application was approved February 27, 1968, and petitioner entered Indiana University Law School in June, 1968, and continued there without military pay or allowances until August, 1970. On September 17, 1968, he was promoted to temporary First Lieutenant. In March, 1970, petitioner was appointed permanent First Lieutenant and promoted to temporary Captain in the Air Force. On July 15, 1970, petitioner applied for discharge from the Air Force as a Class 1-O Conscientious Objector. On November 27, 1970, petitioner's application and tender of resignation from the Air Force was disapproved.

## II

### APPLICABLE LAW

■ There has emerged from the numerous conscientious objector cases in the past twenty-five years, a set of guideposts to be used by the trial court. The specific criteria for conscientious objection have been established as:

(a) There must be a conscientious objection to war in any form. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168;

(b) Opposition must be based upon religious training and belief. United States v. Seegar, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308;

(c) The objection must be sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

As recently as June 28, 1971, these criteria were utilized by the Supreme Court of the United States in Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810.

■ The other major guidepost for the trial court is the "basis in fact" test whereby the foregoing elements of conscientious objection may be measured. This test has been applied in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. United States, *supra.* The uniform

I. Application of Victor L. Streib, December 8, 1967

1. Under the provisions of AFR 36-7 (see Attachment 1), I hereby apply for excess leave to attend the Indiana University School of Law. I wish to enter school in June, 1968, and would graduate in less than 48 months.

2. As described in Rule 4, Table 1, of AFR 36-7, I am a distinguished graduate of class 67-G of Officer Training School (see Attachment 2) and have been notified of selection for regular appointment (see Attachment 3). I will be under 27 years' old upon entry into law school and have proof of acceptance by an accredited law school (see Attachment 4).

3. Attachment 5 is a copy of my Law School Admission Test (LSAT) score report. Attachments 6, 7, and 8 are transcripts of my undergraduate academic record.

4. As stated in paragraph 2 of AFR 36-7, I understand that I must retain my commission for the duration of any existing active duty service commitment, and that the period of legal training cannot be used to satisfy an existing active duty commitment or active duty service obligation. I further understand that I will accrue an additional active duty commitment of six months for each school year in excess leave status which will commence at the completion of training, or upon completion of any unfulfilled active duty service commitment or active duty service obligation, whichever is later. In addition, the Air Force, at its discretion, may terminate my participation in the study program at any time.

5. If excess leave is approved, I will enter Indiana University School of Law in June, 1968. Probable graduation would be in August or December, 1970, after which I would arrange to take the Bar Examination and be admitted to practice before the State Bar or a Federal Court. After graduation, I would re-enter active duty as a Regular Officer in the Office of the Staff Judge Advocate.

rationale of these cases holds that it is neither for the trial court to determine what it would have done had it been sitting as a reviewing board nor for the trial court to pass upon the relative weight of conflicting evidence. It is instead the proper function of the trial court to determine whether or not there is basis in fact for the administrative decision reached.

When the matter of Captain Streib is considered in relation to these guideposts, it is immediately apparent that there is a conflict in evidence. In the consideration of Captain Streib's petition differing conclusions were reached. It is truly a question upon which reasonable minds might reasonably differ.

■ But it cannot be said that there is no basis in fact for the administrative determination. An examination of the record and evidence indicates that the sincerity of Captain Streib is open to question.

Petitioner in his Memorandum on Substantive Issues contends that his conscientious objector belief crystallized in the Fall of 1969.[2] Both shortly prior and subsequent to this time, Captain Streib took action inconsistent with conscientious objector beliefs. In August, 1969, without being required to do so, he requested assignment in procurement law as a Judge Advocate.[3]

In January of 1970, without a requirement to do so, Captain Streib requested assignment to the Washington, D. C. area.[4]

It is difficult to read these letters in the temporal frame of reference selected by Captain Streib as the crystallization period of his conscientious objection

2. Page 6, Petitioner's Memorandum on Substantive Issues
His conscientious objector beliefs became fixed during law school, becoming fully matured in the Fall of 1969.

3. Letter of Captain Streib to HQ USAF (AFJAGA), August 23, 1969
I am attending Indiana University School of Law under AFR 36–7 and will graduate in August, 1970. Assuming I will receive an assignment as a Judge Advocate at that time, I would like to make known to you my preferences.
Before entering law school, I worked as a procurement officer for Aeronautical Systems Division (AFSC). Reference to my Officer Effectiveness Report ratings will indicate my performance on that assignment. Moreover, I was selected as an Outstanding Procurement Officer for 1968 as a result of my initial assignment as a 2Lt procurement officer.
I have done my best work in Contract Law while in law school, and plan to specialize in this area next year.
Therefore, I believe I would be of most value to the Air Force in an assignment in procurement law. I believe that my academic work in Industrial Engineering, Business Administration, and Contract Law, plus my experience as a procurement officer, make me particularly qualified for an assignment in procurement law as a Judge Advocate. Thank you for your consideration.

4. Letter of Captain Streib to HQ USAF (AFJAGA), Jan. 19, 1970
I am attending Indiana University School of Law under AFR 36–7, and will graduate in late August, 1970. My letter to you of 23 August 1969 indicated my preference for an assignment in procurement law as a Judge Advocate. I now wish to make my preferences known to you concerning a geographical area of assignment.
My first, and perhaps sole, preference is the Washington, D. C., area. My reasons include my intention to take the D. C. bar examination, my desire to participate in evening courses in business, economics, and law, and my plans for research and writing necessitating access to law libraries. More significantly, my wife-to-be (target date: August 1970) will have two more years of law school to complete. An assignment to the Washington area would allow us to live near one of the best law schools, where she could attend law school and I could use the libraries for research and writing. Since my wife's transfer to another law school would take a period of time, an early notification of such an assignment would be appreciated greatly. *Moreover, it would seem that an assignment in procurement law in the Washington area would be the best possible employment of my talents, plus being the best possible assignment for my USAF career development plans and my personal desires.* Thank you for your consideration. [Emphasis added]

**1318**

without noting their inconsistencies. The ambivalence of Captain Streib's profession of conscientious objection and his concern for assignment and geographical placement for his future career is at least remarkable. The admonition of Justice Clark in *Dickinson, supra,* for the trial court "to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities" inescapably leads to a question of Captain Streib's sincerity. Even standing alone, these letters would support a finding of "basis in fact." As evidence of petitioner's overall sincerity, their import is reinforced by his admission:

"I wrote two letters to Headquarters USAF–AFJAGA (August 1969 and January 1970) putting forth my pref-

erences for future Air Force assignment. However, I knew at that time that I could never again perform any assignment in the military service. *Those letters were merely attempts to keep from being assigned to Southeast Asia*—an event which would have greatly affected my mental stability at that time." [Emphasis added]

(Application for Discharge, Government Exhibit A, pages 13 and 14)

Should the Secretary of the Air Force have believed Streib, the future career officer; Streib, the conscientious objector; or Streib, the avoider of Viet Nam duty? There was reason to doubt them all.

Basis in fact for the administrative decision does not rest solely upon the letters written by Captain Streib. The report of Major Bauer,[5] psychiatrist,

5. Report of Major Raymond Bauer, August 12, 1970
This is a 29 year old white male, Air Force Captain, who is on extended leave and who is referred for psychiatric evaluation in conjunction with his application for conscientious objector. The patient presented on time for his appointment and was neatly dressed in a business suit and wore long sideburns and a mustache. He related in a polite but formal manner. He spoke softly, slowly, and thoughtfully. His speech was conversational and his thoughts were goal directed. Mood, affect, and attitude were appropriate for the situation and there was no associational defect noted. The clinical estimation of the patient's intelligence would place him in the above average range. At no time during the interview was there any clinical evidence for a thought or affective disturbance. The patient went over his background history, which is more than adequately covered in his accompanying statement. As a graduating law student who is to be married in two weeks, the patient seemed to be handling his conscientious objector status in this interview situation in a very organized and planned manner. It was quite obvious that he knew the function of this psychiatric evaluation was to form some sort of an opinion as to his sincerity and he satirically wished the examiner luck in such a formidable task. He progressed through the formulation of his religious ideation and his

feelings of abhorence towards war much in the same fashion as he has written out in his statement.
In general, he impressed this examiner as an intelligent young man who tends to use intellectualization and rationalization as defenses and though he presented his case very smoothly and glibly he is still somewhat hard put to explain the fact that since 1962 he has had no difficulty with the "war machine" while they were paying for his education and at this time, now that he is about ready to graduate law school and plans to get married, he has these overwhelming feelings of concern for the fact that he would directly contribute to the war effort and destruction of individuals. He seemed to stress over and over again the fact that two years ago he became a vegetarian to sort of express his feelings about death of any kind, no less that of human life. He states he refuses to eat meat and will never do so again the rest of his life. In his early background history, there is evidence for a conflict with the father who is said to be uneducated and an outdoorsman and one who is involved in fights and was considered a "rough-tough individual" by the patient. He states that his father's feelings about him now is that he is a coward and that he is doing the wrong thing by being a conscientious objector. The patient seemed not a little amused at his father's misgivings over his application. The patient also reported that in considering what his course of ac-

raised further questions of Captain Streib's sincerity and the report of Captain Taitano,[6] Chaplain, commented on Captain Streib's sincerity of religious belief.

It cannot pass without note that Captain Streib entered the armed forces with only a high school diploma, performed in a highly competent manner for almost eight calendar years, received both an undergraduate and graduate degree while in the armed forces, and then within months of the completion of his education, sought discharge as a conscientious objector.

While it might be said that there is basis in fact for the granting by the Air Force of Captain Streib's petition, it must be said with equal validity that there exists basis in fact for denying

tion would be as far as returning to active military duty from extended leave status, that he would go to Canada. It was only after talking to several of his friends and law professors that he decided to try to make formal application for conscientious objector status as being the lesser of two evils. He seems to feel quite confident as a lawyer that he can present his case and handle most any of the interview situations to obtain his ends. Two other points in the interview that seemed to cause the patient some difficulty were, (1) the fact that by the patient's own history he has switched from engineering to medical school to law and up till recently has been unable to really find a spot in life for himself or a form of identity, and, therefore, it is somewhat questionable as to how sure and how strong his feelings can be after trying on so many roles in life just prior to this application, and (2) the fact that he *admits to strong secondary gain by avoiding pay back time to the military for his education and pursuing his own interests and his plans for marriage. The patient admitted that he would be hard put to draw the line between this secondary gain motive and his anti-war feelings.* His defense on this point was the fact that he would not be coming back into service as an enlisted man as he was in 1962 but to a rather lucrative salary and a rather good position in the legal department.

My general impression of Captain Streib is that he has some immature tendencies to his personality and while he honestly believes that he is sincere in his application, this examiner does have some question concerning both the permanency of his convictions and to the secondary gain factors involved. While it is not felt that this man is maliciously or consciously avoiding responsibility, there does seem to be a flavor of intellectualization and rationalization of this rather recent adopted philosophy of life and the convenience of this at this time in terms of secondary gain.

Captain Streib is found to be legally competent and knowing right from wrong and responsible for all his actions. [Emphasis added]

6. Report of Captain Miguel A. Taitano, August 27, 1970
1. I have counseled Captain Victor L. Streib, 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, concerning his convictions as a Conscientious Objector.
2. Captain Streib's religious background is Methodist. He was not brought up in what is normally considered a very religious family. He indicated that his church recognizes, respects and supports members who are conscientious objectors even though their views are not necessarily subscribed to by the church.
3. Captain Streib is opposed to any type of killing that involves the shedding of blood. He claims to be a vegetarian as a result of this. He is opposed to all forms of violence. He associates violence with the military structure, and thus objects to the wearing of the uniform and serving his country in any capacity as a military member. To him there is no such thing as "just wars". He indicated that if his family were threatened with harm by another he would make no attempt to give any protection. He stated that his convictions were greatly influenced when, as an Air Force engineer, he was involved in the designing of bombs—bombs that are taking innocent lives.
4. It is difficult for me to judge Captain Streib's sincerity in his beliefs. His being a vegetarian, his opposition even to kill for food, as I see it, is not compatible with the Christian teachings in matters of eating meat. I feel that he has never been a very religious man in terms of active participation in church worship and functions. Furthermore, I feel that his beliefs are strictly a personal matter and not the teachings of his church.

his petition. The evidence warranting either conclusion, it must necessarily follow that the petition for writ of habeas corpus be and the same hereby is denied.