**UNITED STATES of America**

v.

**George Wesley CAUGHMAN, Jr.**

**Crim. No. 72–227.**

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 24, 1972.

U. S. Atty. John K. Grisso, Columbia, S. C., for plaintiff.

Laughlin McDonald, Atlanta, Ga., for defendant.

FINDINGS OF FACT CONCLUSIONS OF LAW and ORDER

CHAPMAN, District Judge.

This action was instituted by an indictment returned on June 6, 1972, in which it was alleged that the defendant George Wesley Caughman, Jr., unlawfully, knowingly and willfully refused to submit to induction into the Armed Forces of the United States on the 15th day of November 1971 in violation of Title 50 United States Code Appendix, Section 462. The defendant waived trial by jury and requested that he be tried by the Court. This request was concurred in by the prosecution and the defendant was afforded a trial by the Court on August 22, 1972, and the attorneys for the parties were allowed time thereafter to submit briefs and memoranda of authority in support of their respective positions.

It now becomes the duty of the Court to make findings of fact and state its conclusions of law in accordance with the provisions of Rule 23(c) of the Federal Rules of Criminal Procedure. After considering all of the evidence submitted by both parties the Court publishes its

### FINDINGS OF FACT

1. After attaining the age of 18 years the defendant duly registered for the draft with the Local Board No. 32 in Lexington County, South Carolina, and on May 19, 1966 was classified I–A. Thereafter, upon defendant's enrollment at Clemson University in September 1966, he was classified II–S as a student and remained so classified during the next four years except for brief periods of time when he was classified I–A, but each time was reclassified II–S upon his request for the purpose of completing his college education.

2. On March 31, 1970, the defendant was notified to report for an Armed Forces Physical Examination on April 27, 1970. He failed to report for this physical and on June 1, 1970, was noti-

fied to explain his reasons to the Local Board within ten days.

3. Defendant was administered a physical examination on July 28, 1970 and found acceptable for military service and was notified of this fact on August 11, 1970.

4. On October 20, 1970, the defendant was classified I–A by Local Board No. 32. This action was taken pursuant to a current information questionnaire submitted by defendant to the Board on September 16, 1970, which indicated that he had completed four years at Clemson University but had not yet received a degree. Defendant was duly notified by the Board of his I–A classification on October 20, 1970, and was at the same time mailed a form SSS 217 advising him of his right to appeal in writing to the State Appeal Board within 30 days.

5. On November 1, 1970, defendant wrote to the Local Board requesting appropriate forms to apply for conscientious objector status. These forms were furnished him and on November 25, 1970, the completed SSS form 150 was received by the Local Board, which advised defendant by letter on the same date that he would appear before the Board on December 15, 1970 to have his claim for conscientious objector classification heard.

6. Defendant was notified on December 4, 1970 that during the calendar year 1970 the highest random sequence number reached by the Local Board was 188–09–01, and since defendant's number was 147–14–02 he was being assigned to the "Extended Priority Group".

7. On December 15, 1970, defendant appeared before the Local Board and presented his claim for conscientious objector status. He testified on behalf of his claim, but presented no witnesses or affidavits. Defendant's testimony was summarized in writing and he affixed his signature thereto on December 22, 1970. The Report of Information of the Board dated December 15, 1970, revealed the following findings:

"The Board felt that the registrant is not sincere in his claim for conscientious objector classification. They felt that he is bitter toward the military as a result of his disenchantment with his ROTC experience. They felt that he is opposed to the military and what it represents rather than war itself."

The defendant did not appeal from the Board's denial of his application for I–O classification.

8. On January 18, 1971, defendant was ordered to report for induction into the Armed Services on February 8, 1971. On January 28, 1971, defendant requested a student deferment which was granted and his order for induction was cancelled by the Board.

9. On August 25, 1971, defendant requested that the Local Board reopen his claim for conscientious objector status on newly acquired information. The Board by letter of August 30, 1971, informed the defendant to place any new information on his classification in writing and submit it to the Board within ten days. The Board also advised that it would review his file and determine if the information warranted reopening his classification. The defendant failed to reply in writing to the Board within ten days.

10. On October 13, 1971, defendant was again ordered to report for induction on November 15, 1971. Upon receipt of this induction order, defendant returned it to the Board together with a letter in which he stated that the cut off lottery number for 1971 had been announced to be 125 and since his number was 147, the sending of an induction notice to him must have been a mistake. The Board answered this letter and returned notice by its certified letter dated October 18, 1971, explaining Caughman's assignment to the "Extended Priority Selection Group". The Board also returned to him the order to report for induction.

11. On October 29, 1971, defendant personally visited the office of Local Board 32 and pursuant to his request was allowed to review the contents of his Selective Service file. Thereafter, on November 8, 1971, the defendant in a letter to the Board reiterated his position in opposition to war and also explained that due to the recent death of his father he needed to be quickly available at home, being the only son. Defendant requested the Board to reconsider his case and forewarned the Board that he did not plan to report for induction on November 15, 1971.

12. On November 10, 1971, defendant's selective service file was forwarded to State Selective Service headquarters for consideration of defendant's request to reopen his conscientious objector claim. The file was returned to the Local Board the following day marked "Return for Normal Processing".

13. On November 15, 1971, the defendant failed to report for induction into the Armed Services as ordered and this action by the defendant provided the basis for the indictment in this case.

## CONCLUSIONS OF LAW

A. The Government contends that defendant's failure to exhaust his administrative remedies within the Selective Service System forecloses his right to judicial review of the denial of his conscientious objector claim by the Local Board. Defendant asserts that this is not a case for applying the doctrine of exhaustion of remedies, and that the Court should review the action of the Local Board and find that it erred in: (1) Denying his claim for conscientious objector status when there was no basis in fact for so doing; and (2) Failing to reopen defendant's classification to consider the granting of a III–A hardship deferment.

There is no provision for direct judicial review of the actions of Selective Service Appeal Boards. Any issues concerning the classification of a registrant must either be raised in a petition for habeas corpus or as a defense to prosecution for failure to submit for injunction. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

B. Defendant contends that the present case should be controlled by McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) in which the United States Supreme Court greatly limited the availability of the doctrine of exhaustion of administrative remedies as a bar to obtaining judicial review of the decisions of Selective Service Boards. McKart had been granted sole surviving son status by the Board, which upon learning of McKart's mother's death, reclassified him I–A. In so doing the Board reasoned that upon her death, the "family unit" had ceased to exist, thereby rendering the sole surviving son status improper. McKart failed to report and was prosecuted. He defended by asserting that he was improperly denied sole surviving son status, but the trial court held that his failure to exhaust the administrative remedies provided by Selective Service System precluded his raising that defense. He was convicted and the Court of Appeals affirmed. However, the United States Supreme Court observed that the case was not an appropriate one to allow the Government to raise exhaustion of remedies as a bar to McKart's defense. Mr. Justice Marshall in delivering the majority opinion stated at page 197, 89 S.Ct. at pages 1664–1665:

"First of all, it is well to remember that use of the exhaustion doctrine in criminal cases can be exceedingly harsh. The defendant is often stripped of his only defense; he must go to jail without having any judicial review of an assertedly invalid order. This deprivation of judicial review occurs not when the affected person is affirmatively asking for assistance from the courts but when the Government is attempting to impose criminal sanctions on him. Such a result should not be tolerated unless the interests underlying the exhaustion rule clearly outweigh the severe burden

imposed upon the registrant if he is denied judicial review. The statute as it stood when petitioner was reclassified said nothing which would require registrants to raise all their claims before the appeal boards. We must ask, then, whether there is in this case a governmental interest compelling enough to outweigh the severe burden placed on petitioner. Even if there is no such compelling interest when petitioner's case is viewed in isolation, we must also ask whether allowing all similarly situated registrants to bypass administrative appeal procedures would seriously impair the Selective Service System's ability to perform its functions."

Obviously, even the broadest reading of *McKart* would not support defendant's present position that the doctrine of exhaustion is no longer viable in criminal cases. Justice Marshall pointed out that in *McKart* the question of whether petitioner was entitled to sole surviving son exemption was purely a matter of statutory interpretation and that the resolution of that question did not require any particular expertise or discretion to be exercised by the Board. Justice Marshall in reversing the Court of Appeals sums up the *McKart* opinion in the following language:

"Since judicial review would not be significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why petitioner's failure to appeal should bar his only defense to a criminal prosecution. There is simply no overwhelming need for the court to have the agency finally resolve this question in the first instance, at least not where the administrative process is at an end and the registrant is faced with criminal prosecution."

Footnote 16 to *McKart* indicates that conscientious objector claims present questions that require the application of expertise or the exercise of discretion and that the Selective Service System is empowered by Congress to make such discretionary determinations with only the local and appeal boards having the necessary expertise.

C. In 1971 the United States Supreme Court decided the case of McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47, which makes *McKart* easier to understand and apply. McGee had applied to be classified as a conscientious objector with his local draft board in 1966. He was informed that his application would be considered at the time his existing student deferment expired. In 1967 the Board was informed that McGee had been accepted for graduate study where he would "probably qualify", in petitioner's own opinion, for a theological exemption. McGee made no request for such an exemption, submitted no information in support thereof, and in response to the board's current information questionnaire, which he refused to fill out, he announced that he would no longer cooperate with the draft board. Thereafter he was classified I–A, but sought neither a personal appearance before the board nor an appeal board review. He refused to submit to induction and was prosecuted and convicted. In *McGee* the Court again speaking through Mr. Justice Marshall, weighed the interests in allowing the Selective Service System "to make a factual record" or "to exercise its discretion or apply its expertise" in the course of decision making against the harsh impact of the exhaustion doctrine when evoked to bar any judicial review of a registrant's claim. The Court found that exhaustion was proper in the *McGee* case since the basic question required the use of the board's expertise in exercise of its discretion. At pages 483–484, 91 S.Ct. at pages 1568–1569, Justice Marshall states:

"*McKart* stands for the proposition that the doctrine is not to be applied inflexibly in all situations, but that decision also plainly contemplates situations where a litigant's claims will lose vitality because the litigant has failed to contest his rights in an administrative forum. The result in a criminal context is no doubt a sub-

stantial detriment to the defendant whose claims are barred. Still this unhappy result may be justified in particular circumstances by considerations relating to the integrity of the Selective Service classification process and the limited role of the courts in deciding the proper classification of draft registrants.

After *McKart* the task for the courts, in deciding the applicability of the exhaustion doctrine to the circumstances of a particular case, is to ask 'whether allowing all similarly situated registrants to bypass [the administrative avenue in question] would seriously impair the Selective Service System's ability to perform its functions.' "

The Court pointed out that McKart's failure to exhaust did not inhibit the making of an administrative record, since all of the relevant facts had been presented, and that the issue was not one of fact and the resolution thereof would not have been aided by the exercise of special administrative expertise, since interpretation of the statute was not a matter of agency discretion. At page 486, 91 S.Ct. at page 1569 the opinion continues:

"In the present case the same interest is pivotal—but here it is apparent that McGee's failure to exhaust did jeopardize the interest in full administrative fact gathering and utilization of agency expertise, rather than the contrary. Unlike the dispute about statutory interpretation involved in *McKart*, McGee's claims to exempt status—as a ministerial student or a conscientious objector—depended on the application of the expertise by administrative bodies in resolving underlying issues of fact. Factfinding for purposes of Selective Service classification is committed primarily to the administrative process, with very limited judicial review to ascertain whether there is a 'basis in fact' for the administrative determination."

■ In the present action Caughman was claiming conscientious objector sta-

tus or hardship exemption and each of these would require the expertise and exercise of discretion by the Local Board and the Appeal Board. Caughman did not exhaust his administrative remedies, since he did not take advantage of his right to appeal. The present case is obviously one for the application of the exhaustion doctrine. In reviewing the complete record in this case, considering the defendant's educational background, his history of numerous deferments and requests for deferments, the failure to exhaust his remedies must be applied to the defendant in this case.

D. Defendant alludes to United States v. Eades, 430 F.2d 1300 (4th Cir. 1970). There the Court applied *McKart* and held that the defendant was not barred from raising the defense that he had been improperly denied conscientious objector status by his failure to exhaust administrative remedies available within the Selective Service System. However, *Eades* involved a matter of statutory construction, since Eades did not believe in a supreme being, and did not involve a matter requiring the discretion or expertise of the Board. *Eades* was also decided before the Supreme Court clarified *McKart* with the *McGee* decision.

■ E. Defendant contends that the Local Board erred in failing to reopen his classification and consider III–A hardship deferrment. In order for the Local Board to be compelled to reconsider a claim for reclassification, the following conditions must be met: (1) Facts not previously before the Board must be alleged; (2) The new facts, if true, must be sufficient to justify a change in classification; and (3) The new facts must have arisen from circumstances beyond the registrant's control. Grosfeld v. Morris, 448 F.2d 1004 (4th Cir. 1971). Even if Caughman had alleged these three requirements in his request for reconsideration, he did so in such a fashion that the Board had no choice but to construe the request as one to reconsider his application for conscientious objector status. He expressly

empty728

asked the Board to reconsider him for such an exemption and it is obvious that the mention of the recent death of his father was only an additional supporting ground, and not a request for hardship classification. In his letter to the Board of November 8, 1971, which letter contains eight paragraphs, the first seven paragraphs reiterate Caughman's opposition to war and killing and his request for a reconsideration of his classification. He also stated that he was willing to serve his country in another manner and that he had volunteered for the peace corps. These statements are inconsistent with a claim that this letter represented an application for reopening and reclassification for hardship classification. Only the last paragraph of the letter would be consistent with a claim for hardship. It reads as follows:

"Also, due to the death of my father (of which I feel you people are partly responsible) on November 2, 1971, I need to be quickly available at home since I am the only son. Please reconsider."

The Local Board did not commit error in refusing to consider the defendant for a hardship deferment.

F. The Court finds that this is a proper case for the application of the exhaustion of remedies doctrine and that the case is controlled by McGee v. United States, supra. Here we have a defendant denied conscientious objector status because the Local Board felt he was not sincere in his beliefs. No other issue or decision by the Board would require more judgment or exercise of discretion and expertise. Local Boards see thousands of young men each year and are especially suited because of their experience in going to the heart of the matter and passing on a registrant's sincerity in his beliefs. Allowing registrants to obtain judicial review in cases of this type, even though they had bypassed the Selective Service Appellate Board would seriously weaken the Selective Service process and substitute the Court in place of the Board as the find-

er of facts. This is not the intent of Congress.

Caughman testified that he misunderstood his position in the draft lottery and that this was the sole cause of his failure to appeal. This testimony by defendant is inconsistent with his other actions, with his educational background and with his obvious understanding of Selective Service processes.

G. Upon closely considering the facts in this case, as have been hereinabove found, and in applying the foregoing law thereto, this Court finds as a matter of fact and concludes as a matter of law that the defendant is barred from now raising the defense that he was improperly denied conscientious objector classification by his failure to appeal the decision of the Local Board to the State Appeal Board, and this Court finds that the defendant did knowingly, willfully and deliberately refuse induction into the Armed Services on November 15, 1971, and is guilty as charged in the indictment.

And it is so ordered.